1  Aram Ordubegian (SBN 185142)
   Andy S. Kong (SBN 243933)
2  M. Douglas Flahaut (SBN 245558)
   **ARENT FOX LLP**
3  555 West Fifth Street, 48th Floor
   Los Angeles, CA 90013-1065
4  Telephone:    213.629.7400
   Facsimile:    213.629.7401
5  aram.ordubegian@arentfox.com
   andy.kong@arentfox.com
6  douglas.flahaut@arentfox.com

7  Attorneys for Richard J. Laski, Chapter 11 Trustee

8

9              **UNITED STATES BANKRUPTCY COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
10                  **LOS ANGELES DIVISION**

11

12  In re                          |  Case No. 2:14-bk-21070-WB

13  **HOLY HILL COMMUNITY**         |  Chapter 11
    **CHURCH,**
14                                  |  **CHAPTER 11 TRUSTEE'S SECOND**
              Debtor.               |  **AMENDED CHAPTER 11 PLAN OF**
15                                  |  **REORGANIZATION (DATED**
                                    |  **NOVEMBER 3, 2015)**
16

17                                  |  Plan Confirmation Hearing:
                                    |  DATE:      November 19, 2015
18                                  |  TIME:      10:00 a.m.
                                    |  PLACE:     Courtroom 1375
19                                  |              255 East Temple Street
                                    |              Los Angeles, CA 90012
20

21

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AFDOCS/12723541.1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................ 1

    A.    Exhibits to this Plan. ............................................................... 2

        1.    Deadline For Objecting to the Confirmation of the Plan. ................. 2

        2.    Identity of Person to Contact for More Information Regarding the Plan. ............................................................................... 2

II.   DEFINITIONS AND RULES OF INTERPRETATION ......................................... 2

III.  CLASSIFICATION AND TREATMENT OF CLAIMS .......................................... 2

    A.    Overview. .................................................................................. 2

    B.    What Creditors Will Receive Under the Plan. ............................................. 4

    C.    Unclassified Claims. ............................................................................... 5

        1.    General. ............................................................................... 5

        2.    Payment of Statutory Fees. ................................................................ 5

        3.    Administrative Expenses. ............................................................... 5

        4.    Bar Date for Administrative Claims. ................................................ 7

            (a)    General Provisions. ................................................................ 7

            (b)    Professionals. ................................................................... 7

            (c)    Ordinary Course Liabilities. ..................................................... 8

            (d)    Tax Claims. .................................................................... 8

        5.    Priority Tax Claims. ........................................................................ 9

    D.    Classified Claims, Treatment, Impairment, and Voting Status. ................... 9

        1.    Classes of Secured Claims ................................................................ 9

            (a)    Class 1A – Allowed Secured Claim(s) of Governmental Units, If Any. ................................................................... 9

            (b)    Class 1B – Secured Claim of Alpine Parking Services, LLC as Successor-In-Interest to Hanmi Bank Note For $3,500,000 ....................................................................... 10

            (c)    Class 1C – Secured Claim of Alpine Parking Services, LLC as Successor-In-Interest to Hanmi Bank Note For $1,000,000 ....................................................................... 11

            (d)    Class 1D – Secured Claim of Downtown Capital, LLC. ....... 12

            (e)    Class 1E – Secured Claim of Edwin M. Rosenberg. ........... 13

            (f)    Class 1F – Secured Claim of 1111 Sunset, LLC (formerly known as Simi Valley Shopping Center ............... 14

            (g)    Class 1G – Secured Claim of Parker Mills, LLP. ................. 16

            (h)    Class 1H – Secured Claim of Law Offices of Carl. J. Sohn. ......................................................................... 16

**TABLE OF CONTENTS**
**(continued)**

|  |  |  |  | Page |
|---|---|---|---|---|
| | | (i) | Class 1I – Secured Claim of Wilshire Escrow Company. | 16 |
| | | (j) | Class 1J – Secured Claim of Dana Park / Beverly Real Estate Investments, LLC / Goldenfish, LLC. | 17 |
| | 2. | | Class 2 – Allowed Non-Tax Priority Unsecured Claims. | 19 |
| | 3. | | Class 3 – Allowed General Unsecured Claims. | 19 |
| | 4. | | Class of Interest Holders. | 20 |
| IV. | MEANS OF EFFECTUATING THE PLAN | | | 20 |
| | A. | | Funding for the Plan. | 20 |
| | B. | | Composition of the Reorganized Debtor and Post-Confirmation Management. | 21 |
| | C. | | Indemnification of Principal and Principal's Agents. | 23 |
| | D. | | Mediation / Resolution of Faction Disputes. | 25 |
| | E. | | Removal or Resignation of Principal. | 26 |
| | | 1. | Removal of Principal. | 26 |
| | | 2. | Resignation of Principal. | 26 |
| | | 3. | Successor Principal. | 27 |
| | F. | | Amendment to the Debtor's Articles of Incorporation. | 27 |
| | G. | | Disbursing Agent. | 27 |
| | H. | | Preservation of Causes of Action and Revesting of Property in the Reorganized Debtor. | 27 |
| | I. | | Preservation of Records. | 28 |
| | J. | | No Dissolution of Debtor. | 28 |
| | K. | | Objection to Claims. | 29 |
| | L. | | Distributions to be Made Pursuant to the Plan. | 29 |
| | M. | | Exculpations and Releases. | 31 |
| | N. | | Injunctions. | 32 |
| | O. | | Mechanics Liens, Judgment Liens, and Other Nonconsensual Liens. | 33 |
| | P. | | Other Provisions of the Plan. | 33 |
| | | 1. | Executory Contracts and Unexpired Leases. | 33 |
| | | 2. | Changes in Rates Subject to Regulatory Commission Approval. | 33 |
| | | 3. | Retention of Jurisdiction. | 33 |
| V. | EFFECT OF CONFIRMATION OF PLAN | | | 35 |
| | A. | | No Discharge. | 35 |
| | B. | | Default. | 35 |

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AFDOCS/12723541.1

# TABLE OF CONTENTS
## (continued)

|  |  |  | Page |
|---|---|---|---|
| | C. | Modification of Plan. | 36 |
| | D. | No Liability for Solicitation or Participation. | 36 |
| | E. | Corporate Actions. | 36 |
| | F. | Estimation of Claims. | 37 |
| | G. | Compromise of Controversies. | 37 |
| | H. | Post-Confirmation Status Report. | 38 |
| | I. | Post-Confirmation Conversion. | 38 |
| | J. | Post-Confirmation US Trustee Fees. | 38 |
| | K. | Final Decree. | 39 |
| VI. | MISCELLANEOUS | | 39 |
| | A. | Other Documents and Actions. | 39 |
| | B. | Notices. | 39 |
| | C. | Governing Law. | 39 |
| | D. | Binding Effect. | 40 |
| | E. | Successors and Assigns. | 40 |
| | F. | No Waiver. | 40 |
| | G. | Inconsistencies. | 40 |
| | H. | Exemption from Certain Transfer Taxes and Recording Fees. | 40 |
| VII. | CONCLUSION AND RECOMMENDATIONS | | 41 |

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AFDOCS/12723541.1

# TABLE OF AUTHORITIES

**Page(s)**

**Statutes**

11 U.S.C.
  Section 101 ...............................................................................................1
  Section 507(a) ........................................................................................19
  Section 507(a)(2) ................................................................................ 5, 6
  Sections 507(a)(3), (4), (5), (6), and (7) ..............................................19
  Section 507(a)(8) .....................................................................................9
  Section 1112(b) ......................................................................................38
  Section 1141(d)(3) .................................................................................35

26 U.S.C.
  Section 6621 .............................................................................................4

28 U.S.C.
  Section 1452 ...........................................................................................34
  Section 1930 ...................................................................................... 5, 22
  Section 1930(a)(6) .................................................................................38

Bankruptcy Code
  Section 327 ...............................................................................................7
  Section 328 ...............................................................................................7
  Section 330 ...............................................................................................7
  Section 331 ...............................................................................................7
  Section 502(c) ................................................................................. 29, 37
  Section 502(d) ........................................................................................21
  Section 503(b) ..........................................................................................7
  Section 1103 .............................................................................................7
  Section 1124 ..................................................................................... *passim*
  Section 1125(e) ......................................................................................36
  Section 1127 ...........................................................................................35
  Section 1146(c) ......................................................................................40

Internal Revenue Code
  Section 501(c)(3) ............................................................................. 21, 28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AFDOCS/12723541.1

1

**Other Authorities**

2

Federal Rules of Bankruptcy

3
    Rule 1009 ................................................................................................30
    Rule 2004 ................................................................................................22
4
    Rule 3022 ................................................................................................39
    Rule 9027 ................................................................................................34

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AFDOCS/12723541.1

# I.

## **INTRODUCTION**

Richard J. Laski is the duly appointed chapter 11 trustee (the "Chapter 11 Trustee") in the above-captioned Bankruptcy Case.  On June 5, 2014, the Debtor, a non-profit California religious corporation, commenced its Bankruptcy Case by filing a voluntary chapter 11 petition under the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. Based upon the Debtor's inability to fulfill its fiduciary obligations as a debtor-in-possession, among other reasons, various parties, including the Office of the United States Trustee ("US Trustee"), filed motions to appoint a chapter 11 trustee, or alternatively, to convert the case to one under chapter 7.  The motion to appoint a chapter 11 trustee was granted and Richard J. Laski was appointed by the US Trustee as the Chapter 11 Trustee of the Debtor's Estate on June 30, 2014.

Chapter 11 allows the Chapter 11 Trustee, creditors and other parties in interest to propose a plan of reorganization.  A plan of reorganization may provide for the Chapter 11 Trustee to reorganize the Debtor's affairs by continuing to operate, liquidate by selling assets of the estate, or a combination of both, among other things.  The Chapter 11 Trustee here is proposing the Second Amended Chapter 11 Plan of Reorganization.   THE DOCUMENT YOU ARE READING IS THE SECOND AMENDED PLAN.

The primary purpose of the Plan is to reorganize the Debtor's affairs by maintaining its status as a California non-profit religious corporation and satisfying the claims of Creditors by making payments to holders of Allowed Claims from the Net Sale Proceeds and using the Excess Cash, if any, to purchase one or more new churches, as set forth in detail in Section IV, below.

The Effective Date of the Plan will be the first business day which is at least fourteen (14) days following the date the Bankruptcy Court enters the order confirming the Plan, unless there is a stay in effect, in which case the Effective Date shall be the first business day after the stay is no longer in effect with respect to the Confirmation Order. The Chapter 11 Trustee, who was appointed in this case by the Bankruptcy Court and the

AFDOCS/12723541.1

US Trustee to represent the interests of the Debtor's Estate and the creditor body and who has a further fiduciary obligation to fulfill the Debtor's mission under its' Articles of Incorporation, strongly encourages all Creditors and interested parties to support confirmation of the Plan.

**A.**    **Exhibits to this Plan.**

          1.    Potential Causes of Actions

          2.    Estimated Allowed Claims by Class

          3.    Debtor's Articles of Incorporation and Bylaws

          4.    Debtor Factions and Authorized Representative List

**1.**    **Deadline For Objecting to the Confirmation of the Plan.**

Objections to the confirmation of the Plan must be filed with the Bankruptcy Court and served upon counsel for the Chapter 11 Trustee at the address listed in the upper left-hand corner of the first page of this Plan by **October 15, 2015**.

**2.**    **Identity of Person to Contact for More Information Regarding the Plan.**

Any interested party desiring further information about the Plan should contact the Chapter 11 Trustee's counsel of record: Aram Ordubegian or Andy S. Kong of Arent Fox LLP, 555 West Fifth Street, 48th Floor, Los Angeles, California 90013, Telephone: (213) 629-7400, Facsimile: (213) 629-7401, emails: aram.ordubegian@arentfox.com, andy.kong@arentfox.com.

**II.**

**DEFINITIONS AND RULES OF INTERPRETATION**

*See* Appendix to the Plan which is incorporated here.

**III.**

**CLASSIFICATION AND TREATMENT OF CLAIMS**

**A.**    **Overview.**

The Effective Date of the Plan shall be the first business day which is at least fourteen (14) days following the date the Bankruptcy Court enters the Confirmation

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

Order, unless there is a stay in effect, in which case the Effective Date shall be the first business day after the stay is no longer in effect with respect to the Confirmation Order.

The Plan provides for, among other things: (a) reorganizing the Debtor's affairs while maintaining the Debtor's status as a California non-profit religious corporation; (b) amending as necessary the Debtor's Articles of Incorporation and Bylaws consistent with this Plan to provide, *inter alia*, that the Chapter 11 Trustee shall be appointed as the sole principal and authorized fiduciary of the Reorganized Debtor (the "Principal") with the Bankruptcy Court maintaining sole jurisdiction over the implementation and interpretation of this Plan and the Confirmation Order and oversight of the Reorganized Debtor until entry of a final decree; (c) payment to those holding Allowed Claims; and (d) to the extent there is sufficient Excess Cash, purchasing one or more new churches by the Reorganized Debtor for the benefit of the Debtor's ruling elders or faction(s).

The Reorganized Debtor, by and through the Principal, shall reserve a sufficient amount of the Net Sale Proceeds for any potential tax consequences under the Plan, including any capital gains taxes from the Sale of the Property if it is determined that any such taxes are due (the "Tax Reserves"). After the Tax Reserves, the Chapter 11 Trustee contemplates the distribution of Net Sale Proceeds to holders of Allowed Claims pursuant to the Plan and the Bankruptcy Code's priority scheme. To the extent there is sufficient Excess Cash, the Reorganized Debtor may purchase one or more new churches in which to continue to operate in accordance with its' Articles of Incorporation (as amended pursuant to this Plan) as a California non-profit religious corporation.

Under the Plan, there are three (3) classes of Creditors, as follows:

(a)    Class 1A through 1J consists of the Secured Claims against the Estate. These classes are not impaired under the Plan and will be deemed to have accepted the Plan.

(b)    Class 2 consists of all of the Estate's Non-Tax Priority Claims, if any. This class is not impaired under the Plan and will be deemed to have accepted the Plan.

(c)    Class 3 consists of all of Estate's General Unsecured Claims which are not otherwise included in Class 2.  This class is not impaired under the Plan and will be deemed to have accepted the Plan.

There are no interest holders in the Debtor since the Debtor is a non-profit religious corporation.  There are however various purported factions that assert they are the ruling elders of the Debtor.  See Exhibit "4".  The Reorganized Debtor, by and through the Principal, shall assist in mediating the disputes between the factions towards a settlement or, if such mediation efforts are unsuccessful, a final decision from the Bankruptcy Court, as discussed in Section IV, below.

All Allowed Administrative Claims of the Estate shall be paid in full on or before the Effective Date of the Plan; *provided, however,* Allowed Administrative Claims of Professionals employed at the expense of the Estate shall be paid in full after the entry of a final, non-appealable order approving their fees on a final basis.

Each holder of an Allowed Priority Tax Claim shall receive in full satisfaction of such holder's Allowed Priority Tax Claim the amount of such holder's Allowed Priority Tax Claim, with applicable interest thereon at the rate specified in 26 U.S.C. § 6621 (the interest has been estimated at 4%), on the Effective Date of the Plan.

Except as otherwise explicitly provided in the Plan, nothing shall affect the Chapter 11 Trustee's or the Reorganized Debtor's rights, defenses, and counterclaims, both legal and equitable, with respect to any Claims, including, but not limited to, all rights of collection, setoff, or recoupment.  See Exhibit "1", which is incorporated herein by reference.

**B.    What Creditors Will Receive Under the Plan.**

As required by the Bankruptcy Code, the Plan classifies Claims in various classes according to their right to priority.  The Plan states whether each class of Claim is impaired or unimpaired (here, no class is impaired).  The Plan provides the treatment each class will receive.

C.     **Unclassified Claims.**

Certain types of Claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Chapter 11 Trustee has not placed the following Claims in a class:

1.     **General.**

Subject to the bar date provisions herein and additional requirements for Professionals and certain other entities set forth below, the Reorganized Debtor or the Disbursing Agent shall pay to each holder of an Allowed Administrative Claim, on account of its Administrative Claim and in full satisfaction thereof, cash equal to the allowed amount of such Administrative Claim on the Effective Date or as soon as practicable thereafter, unless the holder agrees or shall have agreed to other treatment of such Claim.

2.     **Payment of Statutory Fees.**

On or before the Effective Date, all fees payable pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid in Cash equal to the holder of such Administrative Claim.

3.     **Administrative Expenses.**

Administrative expenses are claims for costs or expenses of administering the case that are allowed under 11 U.S.C. § 507(a)(2). The Bankruptcy Code requires that all administrative claims be paid on the Effective Date unless a particular claimant agrees to a different treatment.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

The following chart lists all of the Estate's § 507(a)(2) administrative claims and their treatment under the Plan:

| Name | Amount Currently Owed | Amount Previously Paid | Treatment |
|---|---|---|---|
| Chapter 11 Trustee | $650,000.00 (est.) | $0 | Paid in full by the Chapter 11 Trustee upon entry of an order allowing the final fee application. |
| Arent Fox LLP | $1,350,000.00 (est.) | $0 | Paid in full by the Chapter 11 Trustee upon entry of an order allowing the final fee application. |
| Wilshire Partners of CA, LLC | $20,000.00 (est.) | $0 | Paid in full by the Chapter 11 Trustee upon entry of an order allowing the final fee application. |
| CBRE, Inc. | $0 | $892,500.00 | CBRE was paid in full upon the closing of the Sale. |
| Clerk's Office Fees | $500.00 (est.) | N/A | Paid in full on the Effective Date. |
| Office of the U.S. Trustee Fees | $39,000.00 (est.) | $4,225.00 | Paid in full on the Effective Date. |
| **TOTAL** | **$2,059,500.00 (est.)** | | |

<u>Bankruptcy Court Approval of Fees Required</u>:

The Bankruptcy Court must rule on all fees listed in the above chart before the fees will be owed, except for fees owing to the Clerk's Office and US Trustee or fees to be paid from non-debtor sources. Unless otherwise ordered by the Bankruptcy Court, the Professional must file and serve a properly noticed fee application, and the Bankruptcy Court must rule on the application. Only the amount of fees allowed by the Bankruptcy Court will be owed and required to be paid under the Plan.

By supporting confirmation of the Plan, Creditors are not acknowledging the validity of, or consenting to the amount of, any of these Administrative Claims, and

1  Creditors are not waiving any of their rights to object to the allowance of any of these

2  Administrative Claims.  By supporting confirmation the Plan, Creditors also understand

3  that the final amount of allowed fees and expenses of the Professionals employed in this

4  case may be higher or lower than the figures set forth above, which again are just

5  estimates.

6          **4.      Bar Date for Administrative Claims.**

7                  (a)      General Provisions.

8          Except as provided below for (i) non-tax liabilities incurred in the ordinary course

9  of business by the Debtor and (ii) post-petition tax claims, requests for payment of

10 Administrative Claims must be filed and served on counsel for the Chapter 11 Trustee at

11 the address set out in the upper-left hand corner of this Plan no later than forty-five (45)

12 days after the Effective Date, or such later date, if any, as the Bankruptcy Court shall

13 order upon application made prior to the end of such 45-day period.  Holders of

14 Administrative Claims (including, without limitation, Professionals requesting

15 compensation or reimbursement of expenses and the holders of any Claims for federal,

16 state or local taxes) that are required to file a request for payment of such Claims and that

17 do not file such requests by the applicable bar date shall be forever barred from asserting

18 such Claims against the Debtor, the Estate, the Reorganized Debtor, or any of their

19 respective properties.

20                 (b)      Professionals.

21         All Professionals or other persons requesting compensation or reimbursement of

22 expenses pursuant to any of Sections 327, 328, 330, 331, 503(b) and 1103 of the

23 Bankruptcy Code for services rendered on or before the Effective Date (including, *inter*

24 *alia*, any compensation requested by any Professional or any other person for making a

25 substantial contribution in the case) shall file and serve on counsel for the Chapter 11

26 Trustee (at the address set out in the upper-left hand corner of this Plan), the Twenty

27 Largest Creditors in the case, and the US Trustee, an application for final allowance of

28 compensation and reimbursement of expenses no later than (i) forty-five (45) days after

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

the Effective Date, or (ii) such later date as the Bankruptcy Court shall order upon application made prior to the end of such 45-day period. Objections to applications of Professionals for compensation or reimbursement of expenses must be filed and served on counsel for the Chapter 11 Trustee (at the address set out in the upper-left hand corner of this Plan), the Twenty Largest Creditors in the case, and the US Trustee and the Professionals to whose application the objections are addressed on or before (i) fourteen (14) days after such application is filed and served or (ii) such later date as the Bankruptcy Court shall order or upon agreement between the Chapter 11 Trustee and/or the Reorganized Debtor and the affected Professional.

Any professional fees and reimbursements of expenses incurred by the Reorganized Debtor or its Professionals subsequent to the Effective Date may be paid without further application to or order of the Bankruptcy Court.

(c)    Ordinary Course Liabilities.

Holders of Administrative Claims based on liabilities incurred post-petition in the ordinary course of the Debtors' business, including Ordinary Course Professionals, (other than Claims of governmental units for taxes or Claims and/or penalties related to such taxes) shall not be required to file any request for payment of such Claims. Such Administrative Claims shall be assumed and paid by the Chapter 11 Trustee, the Reorganized Debtor, or the Disbursing Agent pursuant to the terms and conditions of the particular transaction giving rise to such Administrative Claim, without any further action by the holders of such Claims.

(d)    Tax Claims.

All requests for payment of post-petition tax claims, for which no bar date has otherwise been previously established, must be filed with the Bankruptcy Court on or before the later of (i) forty-five (45) days following the Effective Date; and (ii) 120 days following the filing of the tax return for such taxes for such tax year or period with the applicable governmental unit. Any holder of any post-petition tax claim that does not file a request for payment by the applicable bar date shall be forever barred from asserting any

1  such post-petition tax claim against the Debtor, the Estate and the Reorganized Debtor, or

2  any of their respective properties, whether any such post-petition tax claim is deemed to

3  arise prior to, on, or subsequent to, the Effective Date.  Other than the potential capital

4  gain taxes detailed above, the Chapter 11 Trustee is not aware of any other post-petition

5  tax claims; however, certain taxing authorities conduct audits which may result in a post-

6  petition tax liability of which the Chapter 11 Trustee may be currently unaware.

7      **5.      Priority Tax Claims.**

8          Priority tax claims include certain unsecured income, employment and other taxes

9  described by 11 U.S.C. § 507(a)(8).  The Bankruptcy Code requires that each holder of

10  such a § 507(a)(8) priority tax claim receive the present value of such claim in regular

11  installment payments in cash (i) of a total value, as of the Effective Date of the Plan, equal

12  to the allowed amount of such claim; (ii) over a period ending not later than five (5) years

13  after the Petition Date; and (iii) in a manner not less favorable than the most favored non-

14  priority unsecured claim provided for under the Plan.  All Priority Tax Claims will be paid

15  as soon as practical after the Effective Date (or after a Final Order of the Bankruptcy

16  Court allowing such Claim).  The Chapter 11 Trustee and the Reorganized Debtor reserve

17  all rights to object to any such Priority Tax Claims.

18  **D.    Classified Claims, Treatment, Impairment, and Voting Status.**

19          The categories of Claims listed below classify Claims (except for Administrative

20  Claims and Priority Tax Claims) against the Estate for all purposes, including voting,

21  confirmation and distribution pursuant to the Plan.

22      **1.      Classes of Secured Claims**

23          (a)    <u>Class 1A – Allowed Secured Claim(s) of Governmental Units, If

24                 Any.</u>

25          The Los Angeles County Treasurer and Tax Collector ("LA County") filed two (2)

26  proofs of claim (claim no. 2-1 and 3-1).  LA County has been paid $843,692.19 in full and

27  final satisfaction of such Class 1A Secured Claims.  Accordingly, LA County no longer

28  holds a Claim against the Estate and is placed in Class 1A for notice purposes only.  The

1   Chapter 11 Trustee believes the Estate may not have had an obligation to pay or may have

2   overpaid the LA County on account of the foregoing claims; as such the Chapter 11

3   Trustee and the Reorganized Debtor reserve all rights to object to the claims and/or seek a

4   return of all or a portion of the funds that were paid to LA County.

5              (b)      Class 1B – Secured Claim of Alpine Parking Services, LLC as

6                       Successor-In-Interest to Hanmi Bank Note For $3,500,000.

7         Alpine Parking Services, LLC succeeded to the Hanmi Bank note and deed of trust

8   against the Property recorded on or about March 21, 2006 for the principal amount of

9   $3,500,000.00.  See Debtor's Schedule "D".

10        All claims and rights of the member of Class 1B shall be governed by the terms of

11  the Plan only on the later of the Effective Date or at such time as a final non-appealable

12  order is entered or a settlement reached with respect to the amount of the Class 1B

13  Allowed Secured Claim.  The treatment provided herein shall be in full satisfaction of the

14  creditor's Allowed Secured Claim in Class 1B.  The legal, equitable and contractual rights

15  to which the Class 1B Allowed Claim entitle the holder thereof shall remain unaltered by

16  the Plan or, such claims shall be treated in any other manner that shall result in such

17  Claims being deemed unimpaired under Section 1124 of the Bankruptcy Code.

18        After the Effective Date, subject to the rights of and any notice needed to be

19  provided to Palisades Capital Partners, LLC (and together with its assignee 1111 Sunset

20  Boulevard, LLC referred to here as the "Buyer") under the Sale Order and the Court

21  approved purchase and sale agreement ("PSA"), the Chapter 11 Trustee and/or the

22  Reorganized Debtor will retain all rights to dispute, object to, and litigate the Secured

23  Claim of Alpine Parking Services, LLC.  At such time as a final non-appealable order is

24  entered or a settlement reached with respect to the amount of the Class 1B Allowed

25  Secured Claim, if any, the Chapter 11 Trustee, the Reorganized Debtor, or the Disbursing

26  Agent will pay the Class 1B Allowed Secured Claim the full amount of the Allowed

27  Secured Claim in full and final satisfaction.  Class 1B is not impaired and not entitled to

28  vote on the Plan.

1    Finally, notwithstanding anything to contrary elsewhere in the Plan, if a Final

2  Order has not been entered or a settlement has not been reached with respect to the

3  amount of Alpine Parking Services, LLC's Allowed Secured Claim, if any, prior to the

4  Effective Date, the Chapter 11 Trustee or the Reorganized Debtor will reserve $4,025,000

5  (or any other amount agreed to pay and between the Chapter 11 Trustee or the

6  Reorganized Debtor and Alpine Parking Services, LLC) on the Effective Date of the Plan,

7  until such Final Order is entered or settlement is reached.  If the amount required to be

8  paid to Alpine Parking Services, LLC under such Final Order or settlement is less than the

9  sum of $4,025,000 plus the earnings accrued thereon, the surplus shall be available to

10  satisfy other Claims or for use as detailed in Section IV.A, below.

11    (c)    Class 1C – Secured Claim of Alpine Parking Services, LLC as

12        Successor-In-Interest to Hanmi Bank Note For $1,000,000.

13    Alpine Parking Services, LLC succeeded to the Hanmi Bank note and deed of trust

14  against the Property recorded on or about December 5, 2007 for the principal amount of

15  $1,000,000.00.  See Debtor's Schedule "D".

16    All claims and rights of the member of Class 1C shall be governed by the terms of

17  the Plan only on the later of the Effective Date or at such time as a final non-appealable

18  order is entered or a settlement reached with respect to the amount of the Class 1C

19  Allowed Secured Claim.  The treatment provided herein shall be in full satisfaction of the

20  creditor's Allowed Secured Claim in Class 1C.  The legal, equitable and contractual rights

21  to which the Class 1C Allowed Claim entitle the holder thereof shall remain unaltered by

22  the Plan or, such claims shall be treated in any other manner that shall result in such

23  Claims being deemed unimpaired under Section 1124 of the Bankruptcy Code.

24    After the Effective Date, subject to the rights of and any notice needed to be

25  provided to the Buyer under the Sale Order and the PSA, the Chapter 11 Trustee and/or

26  the Reorganized Debtor will retain all rights to dispute, object to, and litigate the Secured

27  Claim of Alpine Parking Services, LLC.  At such time as a final non-appealable order is

28  entered or a settlement reached with respect to the amount of the Class 1C Allowed

Secured Claim, if any, the Chapter 11 Trustee, the Reorganized Debtor, or the Disbursing

Agent will pay the Class 1C Allowed Secured Claim the full amount of the Allowed

Secured Claim in full and final satisfaction. Class 1C is not impaired and not entitled to

vote on the Plan.

Finally, notwithstanding anything to contrary elsewhere in the Plan, if a Final

Order has not been entered or a settlement has not been reached with respect to the

amount of Alpine Parking Services, LLC's Allowed Secured Claim, if any, prior to the

Effective Date, the Chapter 11 Trustee or the Reorganized Debtor will reserve $1,150,000

(or any other amount agreed to pay and between the Chapter 11 Trustee or the

Reorganized Debtor and Alpine Parking Services, LLC) on the Effective Date of the Plan,

until such Final Order is entered or settlement is reached. If the amount required to be

paid to Alpine Parking Services, LLC under such Final Order or settlement is less than the

sum of $1,150,000 plus the earnings accrued thereon, the surplus shall be available to

satisfy other Claims or for use as detailed in Section IV.A, below.

(d)    Class 1D – Secured Claim of Downtown Capital, LLC.

Downtown Capital recorded a deed of trust secured on or about July 18, 2012

against the Property relating to a promissory note. The secured amount purportedly owed

to Downtown Capital is $6,830,292.30. See Proof of Claim No. 40-1.

All claims and rights of the member of Class 1D shall be governed by the terms of

the Plan only on the later of the Effective Date or at such time as a final non-appealable

order is entered or a settlement reached with respect to the amount of the Class 1D

Allowed Secured Claim. The treatment provided herein shall be in full satisfaction of the

creditor's Allowed Secured Claim in Class 1D. The legal, equitable and contractual rights

to which the Class 1D Allowed Claim entitle the holder thereof shall remain unaltered by

the Plan or, such claims shall be treated in any other manner that shall result in such

Claims being deemed unimpaired under Section 1124 of the Bankruptcy Code.

After the Effective Date, subject to the rights of and any notice needed to be

provided to the Buyer under the Sale Order and the PSA, the Chapter 11 Trustee and/or

1  the Reorganized Debtor will retain all rights to dispute, object to, and litigate the Secured

2  Claim of Downtown Capital.  At such time as a final non-appealable order is entered or a

3  settlement reached with respect to the amount of Downtown Capital's Allowed Secured

4  Claim, if any, the Chapter 11 Trustee, the Reorganized Debtor, or the Disbursing Agent

5  will pay Downtown Capital the full amount of the Allowed Secured Claim in full and

6  final satisfaction.  Class 1D is not impaired and not entitled to vote on the Plan.

7       Finally, notwithstanding anything to contrary elsewhere in the Plan, if a Final

8  Order has not been entered or a settlement has not been reached with respect to the

9  amount of Downtown Capital's Allowed Secured Claim, if any, prior to the Effective

10  Date, the Chapter 11 Trustee or the Reorganized Debtor will reserve $8,851,500 (or any

11  other amount agreed to by and between the Chapter 11 Trustee or the Reorganized Debtor

12  and Downtown Capital) on the Effective Date of the Plan, until such Final Order is

13  entered or settlement is reached.  If the amount required to be paid to Downtown Capital

14  under such Final Order or settlement is less than the sum of $8,851,500 plus the earnings

15  accrued thereon, the surplus shall be available to satisfy other Claims or for use as detailed

16  in Section IV.A, below.

17            (e)    Class 1E – Secured Claim of Edwin M. Rosenberg.

18       Edwin M. Rosenberg, a Law Corporation recorded an abstract of judgment against

19  the Property on or about June 1, 2009 for outstanding attorneys' fees.  The secured

20  amount purportedly owed to Edwin M. Rosenberg, a Law Corporation is $24,477.00.  See

21  Proof of Claim No. 5-1.

22       All claims and rights of the member of Class 1E shall be governed by the terms of

23  the Plan only on the later of the Effective Date or at such time as a final non-appealable

24  order is entered or a settlement reached with respect to the amount of the Class 1E

25  Allowed Secured Claim.  The treatment provided herein shall be in full satisfaction of the

26  creditor's Allowed Secured Claim in Class 1E.  The legal, equitable and contractual rights

27  to which the Class 1E Allowed Claim entitle the holder thereof shall remain unaltered by

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

1   the Plan or, such claims shall be treated in any other manner that shall result in such

2   Claims being deemed unimpaired under Section 1124 of the Bankruptcy Code.

3          After the Effective Date, subject to the rights of and any notice needed to be

4   provided to the Buyer under the Sale Order and the PSA, the Chapter 11 Trustee and/or

5   the Reorganized Debtor will retain all rights to dispute, object to, and litigate the Secured

6   Claim of Edwin M. Rosenberg, a Law Corporation.  At such time as a final non-

7   appealable order is entered or a settlement reached with respect to the amount of Edwin

8   M. Rosenberg, a Law Corporation's Allowed Secured Claim, if any, the Chapter 11

9   Trustee, the Reorganized Debtor, or the Disbursing Agent will pay Edwin M. Rosenberg,

10  a Law Corporation the full amount of the Allowed Secured Claim in full and final

11  satisfaction.  Class 1E is not impaired and not entitled to vote on the Plan.

12         Finally, notwithstanding anything to contrary elsewhere in the Plan, if a Final

13  Order has not been entered or a settlement has not been reached with respect to the

14  amount of Edwin M. Rosenberg, a Law Corporation's Allowed Secured Claim, if any,

15  prior to the Effective Date, the Chapter 11 Trustee or the Reorganized Debtor will reserve

16  $28,000.00 (or any other amount agreed to by and between the Chapter 11 Trustee or the

17  Reorganized Debtor and Edwin M. Rosenberg, a Law Corporation) on the Effective Date

18  of the Plan, until such Final Order is entered or settlement is reached.  If the amount

19  required to be paid to Edwin M. Rosenberg, a Law Corporation under such Final Order or

20  settlement is less than the sum of $28,000.00 plus the earnings accrued thereon, the

21  surplus shall be available to satisfy other Claims or for use as detailed in Section IV.A,

22  below.

23         (f)     Class 1F – Secured Claim of 1111 Sunset, LLC (formerly known as

24                 Simi Valley Shopping Center.

25         1111 Sunset, LLC recorded an abstract of judgment against the Property in the

26  purported secured amount of $411,499.48 on or about January 28, 2010.  The claim is

27  listed as disputed in the Debtor's Schedules.

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

All claims and rights of the member of Class 1F shall be governed by the terms of the Plan only on the later of the Effective Date or at such time as a final non-appealable order is entered or a settlement reached with respect to the amount of the Class 1F Allowed Secured Claim.  The treatment provided herein shall be in full satisfaction of the creditor's Allowed Secured Claim in Class 1F.  The legal, equitable and contractual rights to which the Class 1F Allowed Claim entitle the holder thereof shall remain unaltered by the Plan or, such claims shall be treated in any other manner that shall result in such Claims being deemed unimpaired under Section 1124 of the Bankruptcy Code.

After the Effective Date, subject to the rights of and any notice needed to be provided to the Buyer under the Sale Order and the PSA, the Chapter 11 Trustee and/or the Reorganized Debtor will retain all rights to dispute, object to, and litigate the Secured Claim of 1111 Sunset, LLC.  At such time as a final non-appealable order is entered or a settlement reached with respect to the amount of Class 1F's Allowed Secured Claim, if any, the Chapter 11 Trustee, the Reorganized Debtor, or the Disbursing Agent will pay the full amount of the Allowed Secured Claim in full and final satisfaction.  Class 1F is not impaired and not entitled to vote on the Plan.

Finally, notwithstanding anything to contrary elsewhere in the Plan, if a Final Order has not been entered or a settlement has not been reached with respect to the amount of 1111 Sunset, LLC's Allowed Secured Claim, if any, prior to the Effective Date, the Chapter 11 Trustee or the Reorganized Debtor will reserve $598,900 (or any other amount agreed to by and between the Chapter 11 Trustee or the Reorganized Debtor and 1111 Sunset, LLC) on the Effective Date of the Plan, until such Final Order is entered or settlement is reached.  If the amount required to be paid to 1111 Sunset, LLC under such Final Order or settlement is less than the sum of $598,900 plus the earnings accrued thereon, the surplus shall be available to satisfy other Claims or for use as detailed in Section IV.A, below.

(g)    Class 1G – Secured Claim of Parker Mills, LLP.

Parker Mills, LLP filed a proof of claim asserting a charging lien arising out of unpaid attorneys' fees. The secured amount purportedly owed to Parker Mills, LLP was $883,195.21. See Proof of Claim No. 11-1. On August 24, 2015, the Chapter 11 Trustee paid Parker Mills $822,626.29 pursuant to Bankruptcy Court Order in full and final satisfaction of its Claims against the Estate. Accordingly, Parker Mills no longer holds a Claim against the Estate and is placed in Class 1G for notice purposes only.

(h)    Class 1H – Secured Claim of Law Offices of Carl. J. Sohn.

The Law Offices of Carl. J. Sohn filed a proof of claim asserting a charging lien arising out of unpaid attorneys' fees. The secured amount purportedly owed to the Law Offices of Carl. J. Sohn is $1,303,804.94. See Proof of Claim No. 10-1. The Chapter 11 Trustee intends to pay the Law Offices of Carl J. Sohn $1,271,692.05 prior to the Effective Date pursuant to Bankruptcy Court's Order in full and final satisfaction of its Claims against the Estate. Accordingly, the Law Offices of Carl J. Sohn no longer holds a Claim against the Estate and is placed in Class 1H for notice purposes only.

(i)    Class 1I – Secured Claim of Wilshire Escrow Company.

Wilshire Escrow Company filed a proof of claim asserting a secured claim for $40,127.75 related to the DC Loan and the interpled funds in the Los Angeles Superior Court action styled *Wilshire Escrow Company vs. Holy Hill Community Church, et al.*, Case No. BC537444. See Proof of Claim No. 7-1.

All claims and rights of the member of Class 1I shall be governed by the terms of the Plan only on the later of the Effective Date or at such time as a final non-appealable order is entered or a settlement reached with respect to the amount of the Class 1I Allowed Secured Claim. The treatment provided herein shall be in full satisfaction of the creditor's Allowed Secured Claim in Class 1I. The legal, equitable and contractual rights to which the Class 1I Allowed Claim entitle the holder thereof shall remain unaltered by the Plan or, such claims shall be treated in any other manner that shall result in such Claims being deemed unimpaired under Section 1124 of the Bankruptcy Code.

1    After the Effective Date, subject to the rights of and any notice needed to be

2   provided to the Buyer under the Sale Order and the PSA, the Chapter 11 Trustee and/or

3   the Reorganized Debtor will retain all rights to dispute, object to, and litigate the Secured

4   Claim of Wilshire Escrow Company.  At such time as a final non-appealable order is

5   entered or a settlement reached with respect to the amount of Wilshire Escrow Company's

6   Allowed Secured Claim, if any, the Chapter 11 Trustee, the Reorganized Debtor, or the

7   Disbursing Agent will pay Wilshire Escrow Company the full amount of the Allowed

8   Secured Claim in full and final satisfaction.  Class 1I is not impaired and not entitled to

9   vote on the Plan.

10    Finally, notwithstanding anything to contrary elsewhere in the Plan, if a Final

11   Order has not been entered or a settlement has not been reached with respect to the

12   amount of Wilshire Escrow Company's Allowed Secured Claim, if any, prior to the

13   Effective Date, the Chapter 11 Trustee or the Reorganized Debtor will reserve $71,000.00

14   (or any other amount agreed to by and between the Chapter 11 Trustee or the Reorganized

15   Debtor and Wilshire Escrow Company) on the Effective Date of the Plan, until such Final

16   Order is entered or settlement is reached.  If the amount required to be paid to Wilshire

17   Escrow Company under such Final Order or settlement is less than the sum of $71,000.00

18   plus the earnings accrued thereon, the surplus shall be available to satisfy other Claims or

19   for use as detailed in Section IV.A, below.

20    (j)    Class 1J – Secured Claim of Dana Park / Beverly Real Estate

21         Investments, LLC / Goldenfish, LLC.

22    The secured amount purportedly owed to Dana Park is $4,100,000.  See Proof of

23   Claim No. 6-1.  There are no documents attached to the proof of claim.  The Chapter 11

24   Trustee filed an objection to the claim on May 1, 2015 and the Bankruptcy Court entered

25   an order on July 31, 2015 granting the Chapter 11 Trustee's motion disallowing the proof

26   of claim as well as any amendments thereto, including amended proof of claim no. 6-2, in

27   their entirety with prejudice.  On August 13, 2015, Ms. Park filed an appeal appealing the

28   order disallowing her Secured Claim.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

All claims and rights of the member of Class 1J shall be governed by the terms of the Plan only on the later of the Effective Date or at such time as a final non-appealable order is entered or a settlement reached with respect to the amount of the Class 1J Allowed Secured Claim.  The treatment provided herein shall be in full satisfaction of the creditor's Allowed Secured Claim in Class 1J.  The legal, equitable and contractual rights to which the Class 1J Allowed Claim entitle the holder thereof shall remain unaltered by the Plan or, such claims shall be treated in any other manner that shall result in such Claims being deemed unimpaired under Section 1124 of the Bankruptcy Code.

After the Effective Date, subject to the rights of and any notice needed to be provided to the Buyer under the Sale Order and the PSA, the Chapter 11 Trustee and/or the Reorganized Debtor will retain all rights to dispute, object to, and litigate the Secured Claim of Dana Park.  At such time as a final non-appealable order is entered or a settlement reached with respect to the amount of Dana Park's Allowed Secured Claim, if any, the Chapter 11 Trustee, the Reorganized Debtor, or the Disbursing Agent will pay Dana Park the full amount of the Allowed Secured Claim in full and final satisfaction.  Class 1J is not impaired and not entitled to vote on the Plan.

Finally, notwithstanding anything to contrary elsewhere in the Plan, if a Final Order has not been entered or a settlement has not been reached with respect to the amount of Dana Park's Allowed Secured Claim, if any prior to the Effective Date, the Chapter 11 Trustee or the Reorganized Debtor will reserve $4,715,000 (or any other amount agreed to by and between the Chapter 11 Trustee or the Reorganized Debtor and Dana Park) on the Effective Date of the Plan, until such Final Order is entered or settlement is reached.  If the amount required to be paid to Dana Park under such Final Order or settlement is less than the sum of $4,715,000 plus the earnings accrued thereon, the surplus shall be available to satisfy other Claims or for use as detailed in Section IV.A, below.

2.      **Class 2 – Allowed Non-Tax Priority Unsecured Claims.**

Certain priority claims that are referred to in Bankruptcy Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Bankruptcy Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim. However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.

Dong Sub Bang is the only Creditor that has filed a Non-Tax Priority Claim in the amount of $12,475.00 (claim no. 42-1). This claim is disputed. To the extent it is an Allowed Non-Tax Priority Claim, he will be paid in full. Until this claim is resolved, the Chapter 11 Trustee, the Reorganized Debtor, or the Disbursing Agent, as the case may be, will set aside funds for the estimated Allowed Non-Tax Priority Claim in the amount of $12,600. Creditors in Class 2 are not impaired and not entitled to vote on the Plan. If the amount required to be paid to Dong Sub Bang under such Final Order or settlement is less than the sum of $12,600 plus the earnings accrued thereon, the surplus shall be available to satisfy other Claims or for use as detailed in Section IV.A, below.

3.      **Class 3 – Allowed General Unsecured Claims.**

General unsecured claims are unsecured claims not entitled to priority under 11 U.S.C. § 507(a). Holders of Allowed General Unsecured Claims in Class 3 shall retain their legal, equitable, and contractual rights and shall be paid in full on their Claims or such claim shall be treated in any other manner that shall result in such Claim being deemed unimpaired under Section 1124 of the Bankruptcy Code. Except as otherwise provided herein with respect to a Holder of an Allowed General Unsecured Claim that is party to a settlement, compromise, stipulation or Final Order which provides for treatment that is more or less favorable than the treatment provide for herein, the Reorganized Debtor and/or the Disbursing Agent will pay Allowed General Unsecured Claims in full with postpetition interest at the federal judgment annual rate of 0.1% on account of the General Unsecured Claim [0.1% being the federal judgment annual rate on the Petition

Date] or such rate determined by the Bankruptcy Court that will render the General Unsecured Claim unimpaired.  Creditors in this class are not impaired and not entitled to vote on the Plan.

Class 3 Claims whose Claims are disputed, unliquidated and/or contingent, will not be paid the disputed amounts of their Claims.  Rather, after paying for or reserving for all the estimated Administrative Claims and Priority Tax Claims, the Reorganized Debtor and/or the Disbursing Agent will reserve an amount based upon all claimant maximum Claims (the "Reserve Amount") as provided in Exhibit "2" hereto, unless there exists an order of the Bankruptcy Court estimating the claim for purposes of an interim distribution. Disbursements on Allowed General Unsecured Claims will be made within fourteen (14) days of the Effective Date (or after a Final Order of the Bankruptcy Court allowing such claim).  If the amount required to be paid to holders of General Unsecured Claims under such Final Order or settlement is less than the Reserve Amount plus the earnings accrued thereon, the surplus shall be available for use as detailed in Section IV.A, below.

**4.    Class of Interest Holders.**

There are no interest holders in the Debtor since the Debtor is a non-profit religious corporation.

**IV.**

**MEANS OF EFFECTUATING THE PLAN**

**A.    Funding for the Plan.**

The Plan will be funded from (a) the Net Sale Proceeds, and (b) the Reorganized Debtor's net recoveries, if any, from the Causes of Action and the Interpleader Action. The Chapter 11 Trustee submits that the Net Sale Proceeds are more than sufficient to pay all Allowed Claims in full.  See Exhibit "2".  After the Tax Reserves and all Allowed Claims are paid in full, the Reorganized Debtor will use the Excess Cash, if any, to purchase one or more new churches in which to continue to operate in accordance with its' Articles of Incorporation (as amended as discussed in Section IV.B, below).

**B.    Composition of the Reorganized Debtor and Post-Confirmation Management.**

On or after the Effective Date, the Reorganized Debtor will continue to be a California non-profit religious corporation under the sole direction of the Principal with oversight, as necessary, from the Bankruptcy Court. Such Bankruptcy Court oversight will continue until the entry of a final decree. The Reorganized Debtor's Articles of Incorporation and Bylaws will be deemed amended on the Effective Date to be consistent with the terms of this Plan. The Principal is authorized to further amend the Articles of Incorporation and/or Bylaws after the Effective Date, as necessary, to effectuate the terms and spirit of the Plan.

The powers, rights, and responsibilities of the Reorganized Debtor, all of which shall arise upon the occurrence of the Effective Date shall include, but not be limited to: (i) the purchase of one or more new churches in which to continue to operate in accordance with its' Articles of Incorporation, as amended by this Plan or post-Effective Date solely by the Principal (except in the case of dissolution); (ii) subject to the rights of and any notice needed to be provided to the Buyer under the Sale Order and the PSA, assert, prosecute, pursue, compromise and settle any and all Causes of Action and the Interpleader Action and assert and enforce all legal or equitable remedies and defenses belonging to the Estate and the Chapter 11 Trustee, including, without limitation, collections, setoff, recoupment and any rights under section 502(d) of the Bankruptcy Code; (iii) subject to the rights of and any notice needed to be provided to the Buyer under the Sale Order and the PSA, object to Claims, if any; and (iv) take all other actions required under the Plan to maintain the Debtor's and Reorganized Debtor's status as a California non-profit religious corporation qualified for recognition as a tax exempt organization under Section 501(c)(3) of the Internal Revenue Code, among other relevant state and federal statutes or, if in the Principal's sole discretion, complete the dissolution and wind-down of the Reorganized Debtor under applicable non-bankruptcy law and in accordance with the Plan, without further order of the Bankruptcy Court.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

1    The Principal shall provide mediation services to the Debtor factions to resolve and

2    settle their disputes concerning the rightful and lawful ruling elders of the Reorganized

3    Debtor.  The Principal may use the Reorganized Debtor's Assets to pay for any related

4    mediation costs.  If mediation of the disputes with the Debtor's factions is unsuccessful,

5    the Reorganized Debtor and the Principal will participate in the litigation pending before

6    the Bankruptcy Court which will ultimately resolve such disputes.

7    Following the Effective Date, the Reorganized Debtor shall be responsible for the

8    filing of post-confirmation reports required during such periods with the US Trustee and

9    payment from the Assets of all post-confirmation fees charged or assessed against the

10   Estate under 28 U.S.C. §1930 during such periods.

11   Subject to the rights of and any notice needed to be provided to the Buyer under the

12   Sale Order and the PSA, the Reorganized Debtor shall be authorized to negotiate, resolve

13   and enter into settlements on all matters affecting the Estate, including, without limitation,

14   Disputed Claims, and/or other Causes of Action without further order of the Bankruptcy

15   Court.  The Reorganized Debtor shall be authorized to take such actions as it deems

16   appropriate in its' reasonable business judgment with respect to a Cause of Action.

17   The Reorganized Debtor shall be entitled to proceed with and employ all discovery

18   devices permitted under applicable law, including Rule 2004 of the Bankruptcy Rules, in

19   order to investigate any Causes of Action.  Subject to the rights of and any notice needed

20   to be provided to the Buyer under the Sale Order and the PSA, the Reorganized Debtor

21   shall be authorized to take or cause to be taken all actions as necessary to secure the

22   effective implementation of the Plan.

23   The Reorganized Debtor may employ, without further order of the Bankruptcy

24   Court, professionals or other persons to assist it in carrying out its duties hereunder,

25   including former counsel and advisors to the Chapter 11 Trustee, and may compensate

26   and reimburse the expenses of those professionals and other persons, on the terms to be

27   agreed to by the Reorganized Debtor and such professionals and other persons, without

28   further order of the Bankruptcy Court.  The Principal shall be paid $625 per hour plus

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

1  actual out-of-pocket expenses, to be paid monthly from the Assets for services performed

2  under the Plan including mediation services to the Debtor factions.

3      Except as otherwise ordered by the Bankruptcy Court, the amount of any

4  reasonable fees and expenses incurred (or to be incurred) by the Reorganized Debtor on or

5  after the Effective Date (including, but not limited to, taxes) and professional fees and

6  expenses incurred by the Reorganized Debtor from and after the Effective Date in

7  connection with the effectuation of the Plan shall be paid when due without further notice

8  to Creditors or Bankruptcy Court approval.  However, the Principal may, in his sole

9  discretion, provide a quarterly report on the fees and expenses incurred by the Principal

10  and the Reorganized Debtor's professionals to the Debtor's factions listed in Exhibit "4"

11  hereto.

12      Subject to the rights of and any notice needed to be provided to the Buyer under the

13  Sale Order and the PSA, the Reorganized Debtor shall be authorized, without further

14  order of the Bankruptcy Court, to dispose or abandon the Assets when it deems

15  appropriate in its' reasonable business judgment upon proper notice to relevant third

16  parties that may have an interest in the property to be abandoned, including the disposition

17  of files and records of the Debtor in accordance with governing law, as applicable.

18      Subject to the rights of and any notice needed to be provided to the Buyer under the

19  Sale Order and the PSA, the Reorganized Debtor shall be authorized to commence or

20  defend any process or proceeding in the Bankruptcy Court or in any court of competent

21  jurisdiction in accordance with applicable laws.

22  **C.    Indemnification of Principal and Principal's Agents.**

23      The Principal and Principal's agents and servants shall not in any way be liable for

24  any acts or omissions to act except by reason of their gross negligence, willful

25  misconduct, fraud or a criminal act in the performance of their duties under the Plan or the

26  Confirmation Order.  The Reorganized Debtor shall indemnify the Principal and the

27  Principal's agents, attorneys, and servants and hold them harmless from and against any

28  and all liabilities, expenses, claims, damages and losses incurred by them as a direct result

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

of actions taken or omissions to act by them in such capacity or otherwise related to this Plan or the Confirmation Order.  The Reorganized Debtor shall indemnify and hold harmless any entity who was, or is, a party, or is threatened to be made a party, to any pending or contemplated action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that such entity is or was the Principal or the Principal's agent, attorneys, or servant against all costs, expenses, judgments, fines and amounts paid in settlement actually and reasonably incurred by such entity in connection with such action, suit or proceeding, or the defense or settlement of any claim, issue or matter therein, to the fullest extent permitted by applicable law, except in the case of the Principal, if such costs and expenses, judgments, fines or amounts paid in settlement are found in a final, nonappealable judgment by a court of competent jurisdiction to have resulted from the Principal's gross negligence or willful misconduct.

Costs or expenses incurred by any entity entitled to the benefit of the provisions of this Section in defending any such action, suit or proceeding may be paid by the Reorganized Debtor in advance of the institution or final disposition of such action, suit or proceeding, if authorized by the Principal, subject to providing an undertaking to repay all such advanced amounts if it is subsequently determined that such entity is not entitled to indemnification under this Section.  Any dispute regarding such indemnification of the Principal shall be resolved only by the Bankruptcy Court, which shall retain exclusive jurisdiction over matters relating to the indemnification provided under this Section.

The Principal may in his discretion purchase and maintain insurance on behalf of any entity who is or was a beneficiary of this provision.  Promptly after receipt by an indemnified party or parties (the "Indemnified Party") of notice of any claim, or notice of commencement of any action, suit or proceeding by an entity other than the Principal, in respect of which the Indemnified Party may seek indemnification from the Reorganized Debtor pursuant to this Section, the Indemnified Party, if not the Principal, shall notify the Principal of such claim, action, suit or proceeding and shall thereafter promptly convey all further communications and information in respect thereof to the Principal.  If the

1   Indemnified Party is the Principal, the Principal shall notify the Bankruptcy Court of such

2   claim, action, suit or proceeding and shall thereafter promptly convey all further

3   communications and information in respect thereof to the Bankruptcy Court.  The

4   Principal shall, if he so elects, have sole control at the expense of the Reorganized Debtor

5   over the contest, settlement, adjustment or compromise of any claim, action, suit or

6   proceeding in respect of which this Section requires that the Reorganized Debtor

7   indemnify the Indemnified Party.  If the Principal is the Indemnified Party, he shall obtain

8   the written approval of Bankruptcy Court before settling, adjusting or compromising any

9   claim, action suit or proceeding in respect of which this Section requires that the

10  Reorganized Debtor indemnify the Indemnified Party.

11       The Indemnified Party shall cooperate with the reasonable requests of the Principal

12  in connection with such contest, settlement, adjustment or compromises, provided that (i)

13  the Indemnified Party may, if it so elects, employ counsel at its own expense to assist in

14  (but not control) the handling of such claim, action, suit or proceeding, (ii) the Principal

15  shall obtain the prior written approval of the Indemnified Party before entering into any

16  settlement, adjustment or compromise of such claim, action, suit or proceeding, or ceasing

17  to defend against such claim, action, suit or proceeding, if pursuant thereto or as a result

18  thereof injunction or other relief would be imposed upon the Indemnified Party, and (iii)

19  the Indemnified Party shall obtain the prior written approval of the Principal, or, if the

20  Principal is the Indemnified Party, the prior written approval of the Bankruptcy Court,

21  before entering into any settlement, adjustment or compromise of such claim, action, suit

22  or proceeding, or ceasing to defend against such claim, action, suit or proceeding, and no

23  such settlement, adjustment or compromise shall be binding on the Reorganized Debtor

24  without such approval.

25  **D.      Mediation / Resolution of Faction Disputes.**

26       The Principal may provide mediation services to the Debtor factions to resolve and

27  settle their disputes concerning the rightful and lawful ruling elders of the Reorganized

28

Debtor.  The four (4) factions and the authorized representatives thereof purporting to be

the ruling elders and/or the rightful elders of the Debtor are attached hereto as <u>Exhibit "4".</u>

There are no other factions purporting to be the ruling elders of the Debtor and all

other factions or individuals are expressly enjoined from claiming to be a ruling or rightful

elder of the Debtor.  The list in <u>Exhibit "4"</u> was provided to the Chapter 11 Trustee by

counsel for the respective factions.

**E.      Removal or Resignation of Principal.**

**1.      Removal of Principal.**

The Principal appointed pursuant to the Plan and Confirmation Order may only be

removed for cause upon order of the Bankruptcy Court after notice and opportunity for a

hearing.  If the Principal is removed for cause, the Principal shall not be entitled to any

accrued but unpaid fees, reimbursements or other compensation under the Plan or

otherwise.  For purposes of the Plan, the term "cause" shall mean (a) the Principal's gross

negligence, willful misconduct or willful failure to perform his duties under the Plan and

the Confirmation Order or (b) the Principal's misappropriation or embezzlement of any

Assets or the proceeds thereof.  If the Principal is removed by the Bankruptcy Court other

than for "cause", or is unwilling or unable to serve (a) by virtue of his inability to perform

his duties under the Plan due to death, illness, or other physical or mental disability or

(b) for any other reason whatsoever other than for "cause," subject to a final accounting,

the Principal shall be entitled to all accrued and unpaid fees, reimbursement, and other

compensation, to the extent incurred or arising or relating to events occurring before such

removal, and to any out-of-pocket expenses reasonably incurred.

**2.      Resignation of Principal.**

The Principal may resign as the Principal at any time by giving prior written notice

thereof to the Bankruptcy Court subject to approval by the Bankruptcy Court, after

appropriate notice to the US Trustee (the "Notice"); <u>provided</u>, <u>however</u>, that such

resignation shall not be effective earlier than sixty (60) days after the date of such Notice,

unless an earlier effective date is allowed by the Bankruptcy Court.  If the Principal

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

1   resigns from his position hereunder, subject to a final accounting, he shall be entitled to all

2   accrued unpaid fees, reimbursement, and other compensation to the extent incurred or

3   arising or relating to events occurring before such resignation, and any out-of-pocket

4   expenses reasonably incurred.

5          **3.      Successor Principal.**

6          In the event that the Principal is removed, resigns, or otherwise ceases to serve as

7   the Principal, a successor Principal shall be appointed by the outgoing Principal subject to

8   approval by the Bankruptcy Court, after appropriate notice to the US Trustee.

9   **F.     Amendment to the Debtor's Articles of Incorporation.**

10          On the Effective Date, the Debtor's Articles of Incorporation and Bylaws shall be

11  deemed amended consistent with the terms of this Plan.  The Principal is authorized to

12  further amend the Articles of Incorporation and/or Bylaws after the Effective Date, as

13  necessary, to effectuate the terms and spirit of the Plan.

14  **G.     Disbursing Agent.**

15          On the Effective Date, the Principal shall be the disbursing agent (the "Disbursing

16  Agent") for distributions to be made to holders of Allowed Claims.  The Disbursing Agent

17  shall not be required to provide any bond in connection with the making of any

18  distributions pursuant to this Plan.  The Principal as Disbursing Agent will not receive any

19  additional fees for his services as Disbursing Agent; however, the Principal will be

20  compensated for his services and costs incurred in administering the Plan, including the

21  time Principal expends as Disbursing Agent.

22  **H.     Preservation of Causes of Action and Revesting of Property in the**

23          **Reorganized Debtor.**

24          On the Effective Date, all assets, Causes of Action, the Interpleader Action, rights

25  of setoff, collection, and other legal and equitable defenses of the Debtor, the Chapter 11

26  Trustee, and the Estate are preserved for the benefit of the Reorganized Debtor and shall

27  be transferred to and vested in the Reorganized Debtor as set forth in the Plan unless

28  expressly released, waived, relinquished, transferred, sold, and/or assigned under the Sale

Order, the PSA, the Plan, the Confirmation Order or other order of the Bankruptcy Court. No person may rely on the absence of a specific reference in the Plan to any Cause of Action against them as an indication that the Reorganized Debtor will not pursue a Cause of Action against them. A non-exhaustive list of the potential Causes of Action is attached hereto as <u>Exhibit "1"</u>.

No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), claim splitting or laches shall apply to such Claims and Causes of Action by virtue of or in connection with the confirmation, consummation or effectiveness of the Plan; *provided, however,* that no Claims, demands, rights or Causes of Action that the Chapter 11 Trustee or the Estate may hold against any person is expressly released under the Plan or Confirmation Order.

## I.    Preservation of Records.

The Chapter 11 Trustee and the Reorganized Debtor shall preserve for the benefit of the Reorganized Debtor, to the best of their abilities under the circumstances, all documents and files in their actual possession on the Effective Date necessary to the prosecution of the Causes of Action.

## J.    No Dissolution of Debtor.

On the Effective Date, the Debtor shall <u>not</u> be deemed dissolved. The Reorganized Debtor shall use its good faith efforts to maintain the Reorganized Debtor's status as a California non-profit religious corporation qualified for recognition under Section 501(c)(3) of the Internal Revenue Code, among other relevant state and federal statutes. However, if the Principal chooses, in his sole discretion to dissolve the Debtor, the Debtor shall not be required to take any further steps with respect to such dissolution. In that event, the Principal and the Reorganized Debtor shall wind up the Debtor's affairs, prepare any and all required dissolution documents and filings, file all appropriate tax returns, and any funds remaining will be distributed to a non-profit organization with a similar mission as the Debtor in the Principal's sole discretion.

On the Effective Date, though there are no interests in the Debtor based upon the Debtor being a non-profit corporation, out of an abundance of caution, all existing interests in Debtor, shall, without any further action, be cancelled, annulled, and extinguished, and any certificates representing such canceled, annulled, and extinguished interests shall be null and void.  Nothing in the Plan shall diminish or impair the enforceability of any insurance policies that may cover claims against Debtor, its employees, or any other person.  Nothing in the Plan shall be deemed as a waiver of any other rights, claims, interests or privileges of the Debtor.

**K.      Objection to Claims.**

As provided by Section 502(c) of the Bankruptcy Code, the Bankruptcy Court may estimate any contingent or unliquidated disputed claim for purposes of confirmation of the Plan.  Subject to the rights of and any notice needed to be provided to the Buyer under the Sale Order and the PSA, the Chapter 11 Trustee and/or the Reorganized Debtor shall be the party authorized to assert objections to Claims.  The Bankruptcy Court shall retain jurisdiction over the Chapter 11 case to resolve such objections to Claims following the confirmation of the Plan.  The deadline for filing objections to Claims shall be that date this is 180 days from the Effective Date of the Plan but may be extended by order of the Bankruptcy Court upon notice and motion by a party-in-interest.

Nothing contained in the Plan shall constitute a waiver or release by the Chapter 11 Trustee or the Reorganized Debtor of any rights of setoff or recoupment, or of any defense, it may have with respect to any Claim.  The Chapter 11 Trustee, the Reorganized Debtor, and/or the Disbursing Agent, as the case may be, will withhold from property to be distributed under the Plan and will set aside a sufficient amount of cash to be distributed on account of Disputed Claims as of the date of Distribution to Creditors of any particular class as if such claims were allowed in full.

**L.      Distributions to be Made Pursuant to the Plan.**

The Disbursing Agent shall make all Distributions.  The Reorganized Debtor shall use the Excess Cash (after the Tax Reserve), to the extent there is sufficient Excess Cash,

to purchase one or more new churches. Distributions to be made on the Effective Date on account of any Claim shall be made on the Effective Date or as promptly thereafter as practicable. Distributions to be made by the Disbursing Agent under the Plan shall be made by check drawn on a domestic bank or by wire transfer, at the sole election of the Disbursing Agent.

Whenever any Distribution shall be due on a day other than a Business Day, such Distribution shall instead be made, without interest, on the immediately succeeding Business Day, but shall be deemed to have been made on the date due. For federal income tax purposes, a Distribution will be allocated to the principal amount of a Claim first and then to the extent the Distribution exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest (to the extent allowed). Except as specifically provided for in the Plan, in the order confirming the Plan, or in some other order of the Bankruptcy Court, interest shall not accrue on Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. To the extent the Chapter 11 Trustee or the Reorganized Debtor objects to the allowance of any Claim, nothing in the Plan or herein shall be deemed to imply or create for the holders of any Disputed Claims any entitlement to receive interest upon the allowed amount of any such Disputed Claims as a result, *inter alia,* of the delay in payment of such Claims, except as expressly stated in the treatment pursuant to the Plan.

Except as otherwise agreed to by the Reorganized Debtor and/or the Disbursing Agent in writing, distributions to be made to holders of Allowed Claims pursuant to the Plan may be delivered by regular mail, postage prepaid, to the address shown in the Debtor's Schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1009, or, if a different address is stated in a proof of claim duly filed with the Bankruptcy Court, to such address.

Checks issued by the Disbursing Agent to pay Allowed Claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof. Requests for reissuance of any check shall be made to the Disbursing Agent by the holder of the

Allowed Claim to whom such check originally was issued, prior to the expiration of 120 days from the date of issuance of such check. After such date, the Claim shall be deemed disallowed and the monies otherwise payable on account of such Claim shall vest in the Reorganized Debtor (free and clear of all claims and interests by such claimant) and distributed to holders of Allowed Claims in accordance with the Plan.

In connection with the Plan and any instruments issued in connection therewith, the Reorganized Debtor and/or the Disbursing Agent shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.

No Distribution of less than fifty dollars ($50.00) shall be made by the Disbursing Agent to the holder of any Claim and such Distributions will be reserved by the Reorganized Debtor and/or the Disbursing Agent and distributed to such holder on either (i) a Distribution Date on which such holder would be entitled to Distributions totaling at least fifty dollars ($50.00) (including any amounts previously reserved hereunder) or (ii) the final Distribution Date.

Any Cash remaining after the Excess Cash is used to purchase one or more new churches for the Reorganized Debtor may be used to make any necessary improvements or enhancements to the new church(es) (except in the event of dissolution).

M.    **Exculpations and Releases.**

To the maximum extent permitted by law, neither the Chapter 11 Trustee, the Estate, nor any of their employees, agents, representatives, or the Professionals employed or retained by him in the Debtor's Bankruptcy Case whether or not by Bankruptcy Court order (each, a "Released Person"), shall have or incur any liability to any person or entity for an act taken or omission made in good faith or otherwise at any time prior to the Effective Date and/or in connection with or related to the Bankruptcy Case and any adversary proceedings therein, formulation of the Plan, or a contract, instrument, release, or other agreement or document created in connection therewith, confirmation of the Plan,

or the administration of the Estate or consummation and implementation of the Plan and the transactions contemplated therein. Each Released Person shall in all respects be entitled to reasonably rely on the advice of counsel with respect to its duties and responsibilities under the Plan.

N.    **Injunctions.**

The occurrence of the Effective Date after the entry of the Confirmation Order shall enjoin the prosecution, whether directly, derivatively or otherwise, of any Claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability or interest released, discharged or terminated pursuant to the Plan. Moreover, on the Effective Date, other than the factions listed in Exhibit "4" attached hereto, all other factions or individuals shall be permanently enjoined from claiming to be a ruling or rightful elder of the Debtor.

Except as otherwise provided herein, as of the Effective Date, all entities that have held, currently hold or may hold a claim or other debt or liability that is discharged or an interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against the Debtor, the Debtor's Estate, or the Reorganized Debtor on account of any such discharged claims, debts or liabilities or terminated interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor; and (v) commencing or continuing any action in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

By accepting distribution pursuant to the Plan, each holder of an Allowed Claim receiving Distributions pursuant to the Plan will be deemed to have specifically consented to the injunctions set forth in this Section.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

**O.      Mechanics Liens, Judgment Liens, and Other Nonconsensual Liens.**

All Claims of any lienholders not treated in Classes 1A through 3 shall be stripped from all Assets and other property of the Debtor's Estate. Such Creditors and lienholders shall be treated as unsecured claimants for all purposes in Class 3. The Chapter 11 Trustee is not aware of any mechanics liens, judgment liens or other nonconsensual liens affecting the Debtor's Assets or other property at this time.

**P.      Other Provisions of the Plan.**

**1.      Executory Contracts and Unexpired Leases.**

To the extent not previously assumed and assigned or rejected, on the Effective Date, any and all remaining executory contracts and unexpired leases shall be rejected as of the Effective Date.

THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF AN EXECUTORY CONTRACT OR UNEXPIRED LEASE UNDER THE PLAN WILL BE 30 DAYS AFTER DATE OF ENTRY OF THE CONFIRMATION ORDER. Any claim based on the rejection of an executory contract or unexpired lease will be barred if the proof of claim is not timely filed, unless the Bankruptcy Court orders otherwise.

**2.      Changes in Rates Subject to Regulatory Commission Approval.**

To the best of the Chapter 11 Trustee's knowledge, the Debtor is not subject to governmental regulatory commission approval of its rates.

**3.      Retention of Jurisdiction.**

After confirmation of the Plan and occurrence of the Effective Date, in addition to jurisdiction which exists in any other court, the Bankruptcy Court will retain and obtain such jurisdiction as is legally permissible including, without limitation, for the following purposes:

a.      To resolve any and all disputes regarding the operation and interpretation of the Plan and/or the Confirmation Order;

b.      To determine the allowability, classification, or priority of claims and interests upon objection by the Chapter 11 Trustee, the Reorganized Debtor, or by other parties in interest with standing to bring such objection or proceeding;

c.      To determine the extent, validity and priority of any lien asserted against property of the Debtor or property of the Estate;

d.      To construe and take any action to enforce the Plan, the Confirmation Order, and any other order of the Bankruptcy Court, issue such orders as may be necessary for the implementation, execution, performance, and consummation of the Plan, the Confirmation Order, and all matters referred to in the Plan and/or the Confirmation Order and to determine all matters that may be pending before the Bankruptcy Court in the Chapter 11 case on or before the Effective Date with respect to any person or entity related thereto;

e.      To determine (to the extent necessary) any and all applications for allowance of compensation and reimbursement of expenses of professionals for the period on or before the Effective Date;

f.      To determine any request for payment of Administrative Claims;

g.      To determine all applications, motions, adversary proceedings (including all actions removed to the Bankruptcy Court by the Chapter 11 Trustee pursuant to 28 U.S.C. § 1452 and Rule 9027 of the Federal Rules of Bankruptcy Procedure), contested matters, and any other litigated matters instituted during the pendency of this Chapter 11 case whether before, on, or after the Effective Date;

h.      To determine such other matters and for such other purposes as may be provided in the Plan and the Confirmation Order, including without limitation, any claims, proceedings, and actions brought by the Principal concerning the post-Effective Date concerns of the Reorganized Debtor until such time as a final decree is entered in this Bankruptcy Case.

1    i.    To modify the Plan under Section 1127 of the Bankruptcy Code in order to

2    remedy any apparent defect or omission in the Plan or to reconcile any inconsistency in

3    the Plan so as to carry out its intent and purpose;

4    j.    Except as otherwise provided in the Plan or the Confirmation Order, to issue

5    injunctions to take such other actions or make such other orders as may be necessary or

6    appropriate to restrain interference with the Plan or the Confirmation Order, or the

7    execution or implementation by any person or entity of the Plan or the Confirmation

8    Order;

9    k.    To issue such orders in aid of consummation of the Plan, the Confirmation

10   Order, and any concerns of the Reorganized Debtor brought by the Principal until such

11   time as a final decree is entered in the Bankruptcy Case notwithstanding any otherwise

12   applicable non-bankruptcy law, with respect to any person or entity, to the fullest extent

13   authorized by the Bankruptcy Code or Bankruptcy Rules; and

14   l.    To enter a final decree closing the Chapter 11 case.

15                                          **V.**

16                **EFFECT OF CONFIRMATION OF PLAN**

17   A.    **No Discharge.**

18        Debtor will not receive any discharge in this case because Debtor does not meet the

19   test for receiving a discharge as specified under 11 U.S.C. § 1141(d)(3).

20   B.    **Default.**

21        Except as otherwise provided herein or in the Confirmation Order, in the event that

22   the Chapter 11 Trustee and/or the Reorganized Debtor shall default in the performance of

23   any of his/her/its obligations under the Plan and shall not have cured such a default within

24   thirty (30) days after receipt of written notice of default from the creditor to whom the

25   performance is due, then the entity or individual to whom the performance is due may

26   seek only the Bankruptcy Court's intervention.  An event of default occurring with respect

27   to one claim shall not be any event of default with respect to any other claim.

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

C.    **Modification of Plan.**

The Chapter 11 Trustee may modify the Plan at any time before confirmation. The Reorganized Debtor by and through solely the Principal may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

D.    **No Liability for Solicitation or Participation.**

As specified in Section 1125(e) of the Bankruptcy Code, persons that solicit acceptances or rejections of the Plan and/or that participate in the offer, issuance, sale, or purchase of securities offered or sold under the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale, or purchase of securities.

E.    **Corporate Actions.**

On the Effective Dale, all actions contemplated by the Plan shall be deemed authorized and approved in all respects (subject to the provisions of the Plan) by virtue of the entry of the Confirmation Order, in accordance with the Bankruptcy Code and applicable state law, including California state non-profit corporate law, and without any requirement of further action by the Chapter 11 Trustee, including the amendment of the Articles of Incorporation and Bylaws. All matters provided for under the Plan involving the corporate structure of the Debtor and any corporate action required by the Debtor, the Chapter 11 Trustee, or the Reorganized Debtor in connection with the Plan shall be deemed to have occurred and shall be in effect pursuant to the Bankruptcy Code, without any requirement of further action by the Chapter 11 Trustee, the Debtor, or the Reorganized Debtor. On the Effective Date, the Chapter 11 Trustee and/or the Reorganized Debtor are authorized and directed to implement the provisions by the Plan

1    and any other agreements, documents (including the Articles of Incorporation and

2    Bylaws) and instruments contemplated by the Plan.

3    **F.    Estimation of Claims.**

4            Subject to the rights of and any notice needed to be provided to the Buyer under the

5    Sale Order and the PSA, the Reorganized Debtor may, at any time, request that the

6    Bankruptcy Court estimate any contingent or unliquidated General Unsecured Claim

7    pursuant to 11 U.S.C. § 502(c) regardless of whether the Chapter 11 Trustee, the Debtor,

8    or any party in interest previously objected to such Claim or whether the Bankruptcy

9    Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to

10    estimate any Claim at any time during litigation concerning any objection to any Claim,

11    including during the pendency of any appeal relating to any such objection.

12            In the event that the Bankruptcy Court estimates any contingent or unliquidated

13    Claim, that estimated amount will constitute either the allowed amount of such claim or a

14    maximum limitation on such claim, as determined by the Bankruptcy Court.  If the

15    estimated amount constitutes a maximum limitation on such claim, subject to the rights of

16    and any notice needed to be provided to the Buyer under the Sale Order and the PSA, the

17    Chapter 11 Trustee and/or the Reorganized Debtor may elect to pursue any supplemental

18    proceedings to object to any ultimate payment on such claim.

19    **G.    Compromise of Controversies.**

20            From and after the Effective Date, subject to the rights of and any notice needed to

21    be provided to the Buyer under the Sale Order and the PSA, the Reorganized Debtor shall

22    be entitled to compromise any objections to Disputed Claims, or any controversies

23    relating to Causes of Action or other litigation pending after the Effective Date without

24    any need for any notice to Creditors or any approval of the Bankruptcy Court.  However,

25    the Principal may, in his sole discretion, seek the Bankruptcy Court's approval of any

26    such compromises, and the Bankruptcy Court shall retain jurisdiction to rule on such

27    motions.

28

**H.      Post-Confirmation Status Report.**

Within 120 days of the entry of the order confirming the Plan, the Chapter 11 Trustee or the Reorganized Debtor, as the case may be, shall file a status report with the Bankruptcy Court explaining what progress has been made toward consummation of the confirmed Plan. The status report shall be served on the US Trustee, the twenty largest unsecured creditors, and those parties who have requested special notice after the Effective Date. Further status reports shall be filed every 120 days and served on the same entities.

**I.      Post-Confirmation Conversion.**

A Creditor or party in interest may bring a motion to convert the chapter 11 case under § 1112(b) after the Plan is confirmed if there is a default in performing the Plan. However, a Creditor or party in interest may not move to dismiss the chapter 11 case even if there has been a default in performing the Plan without the prior written consent of the Principal.

If the Bankruptcy Court orders the case converted to chapter 7 after the Plan is confirmed, then all property that had been property of Debtor's Estate, and that has not been disbursed pursuant to the Plan, will revest in the chapter 7 estate. The automatic stay will be reimposed upon the revested property, but only to the extent that the Bankruptcy Court did not previously authorize relief from stay during the case.

The order confirming the Plan may also be revoked under very limited circumstances. The Bankruptcy Court may revoke the order only if the order of confirmation was procured by fraud and if the party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the order of confirmation.

**J.      Post-Confirmation US Trustee Fees.**

The Reorganized Debtor shall be responsible for timely payment of all fees incurred after the Effective Date pursuant to 28 U.S.C. Section 1930(a)(6).

**K.    Final Decree.**

Once the Estate has been fully administered as referred to in Bankruptcy Rule 3022, the Reorganized Debtor or another party as the Bankruptcy Court shall designate in the order confirming the Plan, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case.

## VI.

## MISCELLANEOUS

**A.    Other Documents and Actions.**

The Reorganized Debtor or the Chapter 11 Trustee may execute such other documents and take such other actions as may be necessary or appropriate to effectuate the transactions contemplated under the Plan.

**B.    Notices.**

Except as expressly set forth herein to the contrary, all notices and requests in connection with the Plan shall be in writing and shall be hand delivered or sent by facsimile, with a copy sent by first-class mail, addressed to:

Andy S. Kong, Esq.
Arent Fox LLP
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013
Telephone: (213) 629-7400
Facsimile: (213) 629-7401
E-Mail: andy.kong@arentfox.com

All notices to any Creditor shall be sent to it at its last known address or to the last known address of its attorney of record.  Any such person may designate in writing any other address for purposes of this Section, which designation shall be effective on receipt thereof by the Chapter 11 Trustee's counsel.

**C.    Governing Law.**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the state of California (without reference to its conflict of law rules) shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the

Plan, unless otherwise specifically provided in such agreements, documents, or instruments.

**D.    Binding Effect.**

The Plan and all rights, duties and obligations hereunder shall be binding upon and inure to the benefit of the Debtor, Chapter 11 Trustee, the Reorganized Debtor, Creditors, and their respective successors and assigns.

**E.    Successors and Assigns.**

The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and assigns of such entity.

**F.    No Waiver.**

The failure of the Debtor, the Chapter 11 Trustee, or any other entity to object to any Claim shall not be deemed to be a waiver of the Debtor's or other entities' right to object to or examine such Claim, in whole or in part.

**G.    Inconsistencies.**

In the event that the terms or provisions of the Plan are inconsistent with the terms and provisions of the exhibits to the Plan, any document executed in connection with the Plan, the terms of the Plan shall control.

**H.    Exemption from Certain Transfer Taxes and Recording Fees.**

Pursuant to Section 1146(c) of the Bankruptcy Code, any transfers from a debtor to a reorganized debtor or to any other person or entity pursuant to, or implemented by, the Plan (including, without limitation, the granting of a security interest) shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment. The Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to

accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## VII.

## CONCLUSION AND RECOMMENDATIONS

The Plan provides for an equitable distribution to Creditors of the Estate paying holders of Allowed Claims in full on or before 30 days of the Effective Date (or after a Final Order of the Bankruptcy Court allowing such Claim) and provides for the purchase of a new church by the Reorganized Debtor in accordance with the Debtor's mission under its' Articles of Incorporation. The Chapter 11 Trustee was appointed in this case by the US Trustee as an independent fiduciary to protect the interests of general unsecured creditors and has a further fiduciary obligation to fulfill the Debtor's mission under its' Articles of Incorporation. The Chapter 11 Trustee believes the Plan serves the best interest of Estate and its creditor body and furthers the Debtor's mission under its' Articles of Incorporation and therefore, urges all Creditors to support confirmation of the Plan.

FOR THESE REASONS, THE CHAPTER 11 TRUSTEE URGES YOU TO SUPPORT CONFIRMATION OF THE PLAN.


Dated: November 3, 2015

By: _____
       Richard J. Laski,
       Chapter 11 Trustee

PRESENTED BY:

Dated: November 3, 2015

**ARENT FOX LLP**

By:  /s/ Andy S. Kong
       Andy S. Kong
       Attorneys for Richard J. Laski,
       Chapter 11 Trustee

# APPENDIX

# APPENDIX

## DEFINITIONS AND RULES OF INTERPRETATION

### A.    Definitions.

The following defined terms are used in the Plan. Any capitalized term that is not defined but that is defined in the Bankruptcy Code or in the Bankruptcy Rules shall have the definition ascribed to that term in the Bankruptcy Code or Bankruptcy Rules.

1.    "Administrative Claim" means a Claim for costs and expenses of administration allowed under sections 503(b) and 507(a)(1) of the Bankruptcy Code including, without limitation, (a) any actual, necessary costs and expenses of preserving the Estate and winding down the Debtor's business during the case, (b) any indebtedness or obligations incurred or assumed by the Debtor in the ordinary course of business in connection with the conduct of its business during the Chapter 11 case, (c) a Claim of a Professional employed at the expense of an Estate, and (d) any fees or charges assessed against the Estate under section 1930 of title 28 of the United States Code.

2.    "Allowed" means, with respect to any Claim (including any Administrative Claim): (a) a Claim against the Debtor, proof of which was filed within the applicable period of limitation fixed by the Bankruptcy Court in accordance with Rule 3003(c)(3) of the Bankruptcy Rules (i) as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order, (ii) as to which no timely objection has been interposed based upon section 502(d) of the Bankruptcy Code, and (iii) as to which an objection had been interposed, to the extent such Claim has been subsequently allowed (whether in whole or in part) by a Final Order; (b) if no proof of such Claim was filed timely or was withdrawn, any Claim against the Debtor which is listed by the Debtor in the Schedules, as such Schedules may be amended from time to time in accordance with Rule 1009 of the Bankruptcy Rules, as liquidated in amount and not disputed or contingent; (c) any Claim arising from the recovery of property under sections 550 or 553 of the Bankruptcy Code and allowed in accordance with section 502(b) of the Bankruptcy Code; (d) any Claim allowed under, or pursuant to, the terms of the Plan; or (e) any Claim that has been allowed by a Final Order.

3.    "Assets" means any and all property of the Estate, including, without limitation, all property and other interests identified in section 541(a) of the Bankruptcy Code excluding any and all Claims and Causes of Actions that were transferred, sold, and/or assigned to the Buyer pursuant to the Sale Order and the PSA. Without limiting the foregoing, Assets shall include all of the Debtor's real, personal, tangible and intangible property, wherever located, and whether acquired prior to, or after, the Petition Date, including Cash, receivables, Causes of Action, Interpleader Action, and the Dana Park Judgment together with the proceeds and products, replacements and accessions thereof.

4.    "Bankruptcy Case" means the Debtor's chapter 11 case pending in the United States Bankruptcy Court, Central District of California, Los Angeles Division as Case No. 2:14-bk-21070-WB.

5.    "Bankruptcy Code" means Title 11, United States Code, as amended. All citations in the Plan to Section numbers are to the Bankruptcy Code, unless otherwise expressly stated herein.

6.  "Bankruptcy Court" means the United States Bankruptcy Court for the Central District of California, Los Angeles Division, which has jurisdiction over the case and the Estate of the Debtor, or such successor court or tribunal as may hereafter be confirmed or created by lawful authority with power to confirm reorganization plans under Chapter 11 of the Bankruptcy Code and all applicable statutes; rules and regulations pertaining thereto.

7.  "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure, as amended, and the Local Bankruptcy Rules for use in the United States Bankruptcy Court for the Central District of California, as amended.

8.  "Business Day" means any day, other than a Saturday, a Sunday or a "legal holiday," as defined in Rule 9006(a) of the Bankruptcy Rules.

9.  "Cash" means legal tender of the United States and foreign currency, including amounts on deposit at financial institutions in checking accounts, deposit accounts, money market accounts and the like.

10.  "Causes of Action" means all causes of action and claims held by or capable of assertion by the Debtor or the Estate, including, without limitation, all insider causes of action, all avoidance and recovery causes of action and objections to Claims under Sections 105, 502, 506, 542 through 551 and 553 of the Bankruptcy Code that belong to the Debtor or to the Estate, all Section 510 actions, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whether known, unknown, reduced to judgment, not reduce to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, and whether asserted or assertable, directly or derivatively that the Debtor or the Estate could assert immediately prior to the Effective Date, but excludes all such causes of action, claims or defenses released, waived or extinguished by the Debtor pursuant to the Sale Order, PSA, the Plan or a Final Order of the Bankruptcy Court.

11.  "Chapter 11 Trustee" means Richard J. Laski, the chapter 11 trustee appointed in the Debtor's Bankruptcy Case.

12.  "Claim" means: (a) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

13.  "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order.

14.  "Confirmation Hearing" means the hearing(s) scheduled by the Bankruptcy Court for the purpose of considering the confirmation of the Plan.

15.  "Confirmation Order" means the order, as entered, of the Bankruptcy Court confirming the Plan.

16.  "Creditor" means any Person who: (a) holds a Claim against the Debtor that arose prior to the Petition Date; (b) holds a Claim against the Debtor, which arose after the Petition Date, other than an Administrative Claim of the type specified in Bankruptcy Code section 503(b); or (c) holds a Claim against the Debtor of the kind specified in Bankruptcy Code sections 502(g), 502(h) or 502(i).

17.    "Dana Park Judgment" means the Judgment on Chapter 11 Trustee's Motion: (1) for Reasonable Attorneys' Costs; and (2) For Sanctions and Damages Caused by Contempt Violating the Automatic Stay entered by the Bankruptcy Court on or about July 30, 2015 for the Chapter 11 Trustee and against Dana Park awarding the Chapter 11 Trustee $24,953.06 in reasonable attorney fees and costs which judgment is currently on appeal to the Ninth Circuit Bankruptcy Appellate Panel as case no. CC-15-1270.

18.    "Debtor" means Holy Hill Community Church, a California non-profit religious corporation and debtor in the above-captioned bankruptcy case.

19.    "Disputed Claim" means a Claim: (a) if such Claim is not an Allowed Claim as of a particular point in time; (b) if no proof of Claim has been filed by the claims bar date as set forth in the Plan or the Administrative Claims bar date as set forth in the Plan, as applicable, or has otherwise been deemed timely filed under applicable law, (i) that is listed on the Schedules as disputed, contingent or unliquidated or (ii) that is not listed on the Schedules; or (c) if a proof of Claim has been filed by the claims bar date or the Administrative Claims bar date, as applicable, or has otherwise been deemed timely filed under applicable law, for which an objection, complaint or request for estimation has been filed by the Debtor, the Chapter 11 Trustee, the Reorganized Debtor, or any other party in interest by the deadline to file an objection to Claim, and such objection has not been withdrawn or denied in its entirety by Final Order. A Claim or Administrative Claim that is disputed as to its amount shall not be Allowed in any amount for purposes of Distribution until it is no longer a Disputed Claim.

20.    "Distribution" means any distribution made pursuant to the terms of the Plan.

21.    "Distribution Date" means any date on which a Distribution is made to holders of Allowed Claims under the Plan, or as otherwise agreed. The first Distribution shall occur on or as soon as practicable after the Effective Date. To the extent subsequent Distributions are necessary, such subsequent Distributions shall occur as soon after the first Distribution Date as the Reorganized Debtor and/or the Disbursing Agent shall determine.

22.    "Estate" means the Debtor's estate created pursuant to section 541 of the Bankruptcy Code upon the Petition Date.

23.    "Excess Cash" means the Net Sale Proceeds available for the purchase of one or more churches for the Reorganized Debtor.

24.    "Final Order" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for reargument or rehearing shall then be pending; provided, however, if an appeal, or writ of certiorari, reargument or rehearing thereof has been filed or sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, further, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order.

25.    "General Unsecured Claim" means any Unsecured Claim against the Debtor that is (a) not an Administrative Claim, Priority Tax Claim, Non-Tax Priority Claim, or Secured Claim, or (b) is otherwise determined by the Bankruptcy Court to be a General

1    Unsecured Claim.  General Unsecured Claims will not include Claims that are disallowed,
released, or subordinated, whether by operation of law or pursuant to order of the Bankruptcy

2    Court, written release or settlement, the provisions of the Plan or otherwise.

3        26.    "Governmental Unit" shall have the meaning provided in Section 101(27) of
the Bankruptcy Code.

4

5        27.    "Interest" means any equity interest in any Debtor, as provided by Section
101(16) of the Bankruptcy Code, including, without limitation, any common stock interest,
preferred stock interest, stock option, warrant, partnership interest, or membership interest.

6

7        28.    "Interpleader Action" means the action styled *Wilshire Escrow Company vs.
Holy Hill Community Church, et al.*, Case No. BC537444 and removed to the Bankruptcy
Court from the Los Angeles Superior Court on or about August 28, 2015 pending as

8    adversary proceeding no. 2:15-ap-01466-WB where Wilshire Escrow Company interpled
approximately $4,773,188.

9

10       29.    "Lien" means any lien, encumbrance, pledge or other charge against property.

11       30.    "Net Sale Proceeds" means cash available after payment and/or satisfaction
of all Allowed Secured Claims, Allowed Administrative Claims, Allowed Priority Tax
Claims, and after setting aside the Tax Reserves, to the extent applicable.

12

13       31.    "Non-Tax Priority Claim" means a Claim which is entitled to priority
treatment under section 507(a) of the Bankruptcy Code, excluding Claims entitled to priority
under Bankruptcy Code subsections 507(a)(1) and 507(a)(8).

14

15       32.    "Ordinary Course Professionals" means any attorneys, accountants, and other
professionals or professional service providers such as title companies, surveyors, real estate
closing professionals real estate brokers, property managers, marketing and business

16   consultants utilized by the Debtor or the Chapter 11 Trustee in the ordinary course of the
Debtor's operation and business affairs.

17

18       33.    "Person" means any individual, corporation, partnership, association, joint
venture, limited liability company, limited liability partnership, estate, trust, unincorporated
organization or governmental unit or subdivision thereof or other entity.

19

20       34.    "Petition Date" means June 5, 2014, the date on which the Debtor filed its
petition for relief under Chapter 11 of the Bankruptcy Code.

21       35.    "Plan" means the Chapter 11 Trustee's Chapter 11 Plan of Reorganization,
together with the exhibits and schedules hereto, as the same may be amended or modified

22   from time to time.

23       36.    "Principal" means the sole principal and authorized fiduciary of the
Reorganized Debtor appointed pursuant to the Debtor's amended Articles of

24   Incorporation and Bylaws.

25       37.    "Priority Claims" means Priority Tax Claims and Non-Tax Priority Claims.

26       38.    "Priority Claims Reserve" means a reserve created by the Reorganized Debtor
or the Disbursing Agent on the Effective Date in an amount equal to (a) all estimated but

27   unpaid Allowed Priority Claims and (b) all estimated Disputed Priority Claims, to the extent
the Reorganized Debtor or the Disbursing Agent has Cash to distribute after payment of

28   Administrative Claims and Secured Claims.

39. "Priority Tax Claim" means a Claim or a portion of a Claim, which is entitled to priority under section 507(a)(8) of the Bankruptcy Code.

40. "Professional" means a person or entity employed by the Debtor, Chapter 11 Trustee, or Reorganized Debtor pursuant to a Final Order in accordance with Sections 327 or 1103 of the Bankruptcy Code.

41. "Property" means that certain real property commonly known as 1111 Sunset Blvd., Los Angeles, California (APN # 5406-020-003).

42. "PSA" means the Purchase and Sale Agreement entered into by and between the Trustee and the Buyer pursuant to the Sale Order.

43. "Reorganized Debtor" means the Debtor as reorganized pursuant to the Plan after the Effective Date by merger, consolidation, or otherwise.

44. "Schedules" means the Schedules of Assets and Liabilities and Statement of Financial Affairs filed by the Debtor with the Bankruptcy Court on August 1, 2014 pursuant to Bankruptcy Rule 1007, and any amendments thereto.

45. "Secured Claim" means, with respect to any Claim against the Debtor, that portion which, pursuant to section 506 of the Bankruptcy Code, is (a) secured by a valid, perfected, and enforceable security interest, lien, mortgage, or other encumbrance, that is not subject to avoidance under applicable bankruptcy or nonbankruptcy law, in or upon any right, title, or interest of the Debtor in and to property of the Estate, to the extent of the value of the holder's interest in such property as of the relevant determination date or (b) Allowed as such pursuant to the terms of the Plan (subject to the occurrence of the Effective Date). Secured Claim includes any Claim to the extent that it is (x) subject to an offset right under applicable law and (y) a Claim against the Debtor pursuant to sections 506(a) and 553 of the Bankruptcy Code.

46. "Secured Creditor" means a Creditor holding a Secured Claim.

47. "Sale Order" means the *Order (1) Authorizing the Sale of Property of the Estate Under 11 U.S.C. § 363 Free and Clear of All Liens, Claims, and Encumbrances, Subject to Higher and Better Offers; (2) Approving the Purchase and Sale Agreement; (3) Approving Assumption and Assignment of Certain Unexpired Leases and/or Executory Contracts; and (4) Approving the Form and Manner of Notice* entered by the Bankruptcy Court on or about July 17, 2015 as Docket Number 268.

48. "Tax Reserves" means a reserve of Net Sale Proceeds for any potential tax consequences under the Plan, including any capital gains taxes from the sale of the Property if it is determined that any such taxes are due.

"**B.    Rules of Construction.**

For the purpose of the Plan, unless otherwise provided in the Plan, (i) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (ii) each pronoun stated in the masculine, feminine or neuter shall include the masculine, feminine and neuter; (iii) any reference in the Plan to

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES
AFDOCS/12134981.1

46

1   an existing document, exhibit or schedule filed or to be filed means such document or

2   schedule as it may have been or may be amended, modified or supplemented pursuant to the

3   Plan; (iv) any reference to an entity as a holder of a Claim includes that entity's successors

4   and assigns; (v) except as otherwise stated herein, all references in the Plan to Sections,

5   Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (vi)

6   the words "herein," "hereunder" and "hereto" refer to the Plan in its entirety rather than to a

7   particular portion of the Plan; (vii) unless otherwise provided in the Plan, any reference in the

8   Plan to a contract, instrument, release, indenture, agreement, or other document being in a

9   particular form or on particular terms and conditions means that such document shall be

10  substantially and materially in such form or substantially and materially on such terms and

11  conditions; and (viii) the rules of construction set forth in Section 102 of the Bankruptcy

12  Code shall apply to the extent such rules are not inconsistent with the express terms of the

13  Plan or any other provision in this Section.

14          **C.**      **Exhibits.**

15          All exhibits to the Plan are incorporated into and are a part of the Plan as if set forth

16  in full herein.

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 1

# EXHIBIT 1
## TO PLAN OF REORGANIZATION
### PRESERVED POTENTIAL CAUSES OF ACTION

All defined terms used herein shall have the meanings set forth in the Plan. The following is a non-exhaustive list of potential parties against whom the Debtor, the Estate, and/or the Reorganized Debtor may hold a claim or cause of action excluding any and all Claims and Causes of Actions that were transferred, sold, and/or assigned to the Buyer pursuant to the Sale Order and PSA. The Debtor and/or the Reorganized Debtor reserve the right to modify this list to amend or add parties or causes of action, but disclaim any obligation to do so.

In addition to the possible causes of action and claims listed below, the Debtor, the Estate, and/or the Reorganized Debtor have or may have, in the ordinary course of their business, numerous causes of action and Claims or rights against contractors, subcontractors, suppliers, and others with whom they deal in the ordinary course of their business (the "Ordinary Course Claims"). The Debtor and/or the Reorganized Debtor reserve, for the benefit of the Reorganized Debtor, their right to enforce, sue on, settle, or compromise (or decline to do any of the foregoing) the Ordinary Course Claims, as well as the claims and causes of action listed below and all other claims and causes of action excluding any and all Claims and Causes of Actions that were transferred, sold, and/or assigned to the Buyer pursuant to the Sale Order and PSA. The Debtor, the Estate, and/or the Reorganized Debtor also have, or may have, and are retaining, various claims or causes of action arising under or pursuant to its insurance policies, and all rights arising under, relating to, or in connection with such policies are expressly reserved and retained.

> Causes of Action arising out of or in connection with Debtor's business, properties, or operations;

> Causes of Action arising out of transactions involving, concerning, or related to the Debtor;

> All Causes of Action, rights, privileges, and remedies arising out of any of the leases under which Debtor is a lessor or lessee;

> All Causes of Action, rights, privileges, and remedies against Downtown Capital, LLC, 1111 Sunset, LLC, Metropolitan Water District of Southern California, LA County, LA Sa-Rang Community Church, Dana Park, affiliates and related entities of Dana Park, or the Debtor's insiders within the meaning of 11 U.S.C. § 101(31), and current or former elders or members of the Debtor including, but not limited to, any commercial tort claims; and

> All other rights, privileges, claims, actions, or remedies of the Debtor, the Estate, and/or the Reorganized Debtor existing on the Effective Date, whether arising at law or in equity.

There may also be other Causes of Action which currently exist or may subsequently arise that are not set forth herein because the facts underlying such Causes of Action are not currently known or sufficiently known by the Debtor or the Reorganized Debtor. The failure to list any such unknown Causes of Action herein is not intended to limit the rights of the Debtor or Reorganized Debtor to pursue any unknown Causes of Action to the extent the facts underlying such unknown Causes of Action become more fully known in the future.

Unless Causes of Action against any individual or entity are expressly waived, relinquished, released, compromised, or settled by the Plan or any Final Order or were

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

48

1 transferred, sold, and/or assigned to the Buyer pursuant to the Sale Order and PSA, the Debtor
and the Reorganized Debtor expressly reserve for the benefit of Reorganized Debtor, all Causes
2 of Action, including, without limitation, all unknown Causes of Action for later adjudication, and
no preclusion doctrine (including, without limitation, the doctrines of *res judicata,* collateral
3 estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches)
4 shall apply to such Causes of Action by virtue of or in connection with the confirmation,
consummation or effectiveness of the Plan.  In addition, subject to the rights of and any notice
5 needed to be provided to the Buyer under the Sale Order and PSA, the Debtor and the
Reorganized Debtor expressly reserve for their benefit and the benefit of the Reorganized Debtor,
6 the right to pursue or adopt any claims alleged in any lawsuit in which Debtor is a defendant or an
7 interested party, against any individual or entity, including plaintiffs and co-defendants in such
lawsuits.

- 2 -

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AFDOCS/12134970.1

49

# EXHIBIT 2

## Holy Hill Community Church
## SUMMARY OF CLAIMS and RESERVES
## Trustee Reorganization Plan

| | Claims Filed | Maximum Reserve Required | Plan Reserves | | |
| --- | --- | --- | --- | --- | --- |
| | | | Paid at Closing | Paid Before Effective Date | Reserve Balance |
| **Administrative & Priority Tax Claims** | | | | | |
| Administrative Expenses | $ 2,952,000 | $ 2,952,000 | | | $ 2,059,500 |
| Capital Gains Tax Reserve | | 5,000,000 | | | 5,000,000 |
| Priority Tax Taxes | 5,067 | 5,118  Note 1 | | | 5,118 |
| **Total Admin & Priority Tax Claims** | $ 2,957,067 | $ 7,957,118 | $ (892,500) | $ - | $ 7,064,618 |
| **Secured Claims** | | | | | |
| 1A  LA County Treasurer and Tax Collector | $ 843,692 | $ 843,692  Note 3 | $ | $ | $ - |
| 1B  Alpine Parking Services, LLC | 3,500,000 | 4,025,000  Note 3 | (728,971) | (114,721) | 4,025,000 |
| 1C  Alpine Parking Services, LLC | 1,000,000 | 1,150,000  Note 3 | | | 1,150,000 |
| 1D  Downtown Capital, LLC | 6,830,292 | 8,851,500  Note 3 | | | 8,851,500 |
| 1E  Edwin M. Rosenberg | 24,477 | 28,000  Note 3 | | | 28,000 |
| 1F  Simi Valley Shopping Center | 414,462 | 598,900  Note 3 | | | 598,900 |
| 1G  Parker Shumaker Mills, LLP | 822,626 | 822,626 | | (822,626) | - |
| 1H  Law Offices Of Carl James Sohn | 1,271,692 | 1,271,692 | | (1,271,692) | - |
| 1I  Wilshire Escrow Company | 40,128 | 71,000  Note 3 | | | 71,000 |
| 1J  Dana Park dba JB Sunset, Beverly Estate | 4,100,000 | 4,715,000  Note 2 | | | 4,715,000 |
| **Total Secured Creditors** | $ 18,847,369 | $ 22,377,410 | $ (728,971) | $ (2,209,039) | $ 19,439,400 |
| **Non-Tax Priority Unsecured Claims** | | | | | |
| 2  Dong Sub Bang | $ 12,475 | $ 12,600  Note 1 | | | $ 12,600 |
| **General Unsecured Claims** | | | | | |
| 3  General Unsecured (Page 2) | $ 1,727,105 | $ 1,744,376  Note 1 | | | $ 1,744,376 |
| **GRAND TOTAL - PLAN RESERVES** | $ 23,544,016 | $ 32,091,504 | $ (1,621,471) | $ (2,209,039) | $ 28,260,994 |

ESTIMATED AVAILABLE FUNDS ON EFFECTIVE DATE (INCLUDING INTERPLED FUNDS)   $ 29,474,000

EXCESS CASH IF ALL PLAN RESERVES ARE REQUIRED   $ 1,213,006

Note 1: Priority tax claims, priority unsecured claims and general unsecured claims reserves include an additional reserve of 1% which is substantially above the Federal Judgement Annual Rate.

Note 2: Secured creditor claim reserves include an additional reserve of 15% to cover interest and possible legal fees for secured creditors.

Note 3: Secured creditor claim reserves for Claims 1B, 1C, 1D, 1F and 1I are based on calculations provided to the Trustee by the each respective secured creditor.

**Exhibit 2**
Page 1 of 2

Exhibit 2 - HHCC Schedule of Claims REVISED 12-3-15

50

# Holy Hill Community Church
## SUMMARY OF CLAIMS and RESERVES
### Trustee Reorganization Plan

| | Claims Filed | Maximum Reserve Required | | Plan Reserves Paid at Closing | Plan Reserves Paid Before Effective Date | Reserve Balance |
|---|---|---|---|---|---|---|
| **General Unsecured Claims** | | | | | | |
| 1  Albert K. Shin | $ 17,000 | $ 17,170 | Note 1 | | | $ 17,170 |
| 2  Chanhyo Tak | 97,000 | 97,970 | Note 1 | | | 97,970 |
| 3  Cheounung Kim | 2,000 | 2,020 | Note 1 | | | 2,020 |
| 4  Chinwa Jung | 11,300 | 11,413 | Note 1 | | | 11,413 |
| 5  Chunghyun Ahn | 7,000 | 7,070 | Note 1 | | | 7,070 |
| 6  Henry Hae Hoon Owh | 33,000 | 33,330 | Note 1 | | | 33,330 |
| 7  James C. Oh | 96,000 | 96,960 | Note 1 | | | 96,960 |
| 8  Joan Park | 7,000 | 7,070 | Note 1 | | | 7,070 |
| 9  Jong Oak Kim | 1,000 | 1,010 | Note 1 | | | 1,010 |
| 10 Joong Hoon Kim | 1,000 | 1,010 | Note 1 | | | 1,010 |
| 11 Joongchil Kim | 13,000 | 13,130 | Note 1 | | | 13,130 |
| 12 Joyoung Bang | 10,000 | 10,100 | Note 1 | | | 10,100 |
| 13 Jung Hyun & Bok Hee Ahn | 7,000 | 7,070 | Note 1 | | | 7,070 |
| 14 Jungsun Choi | 2,000 | 2,020 | Note 1 | | | 2,020 |
| 15 Kon Kyu Yu & Sun Yim Yu | 38,000 | 38,380 | Note 1 | | | 38,380 |
| 16 Kwang Chul Shin | 17,000 | 17,170 | Note 1 | | | 17,170 |
| 17 Moonkyu Yu | 38,000 | 38,380 | Note 1 | | | 38,380 |
| 18 Oksun Whang | 1,000 | 1,010 | Note 1 | | | 1,010 |
| 19 Pilson Joo | 2,000 | 2,020 | Note 1 | | | 2,020 |
| 20 Sangnam Kim | 39,000 | 39,390 | Note 1 | | | 39,390 |
| 21 Seungsook Shlim | 5,000 | 5,050 | Note 1 | | | 5,050 |
| 22 Snell & Wilmer LLP | 84,046 | 84,887 | Note 1 | | | 84,887 |
| 23 Soll Jang | 5,000 | 5,050 | Note 1 | | | 5,050 |
| 24 Soo Nam Oh | 3,000 | 3,030 | Note 1 | | | 3,030 |
| 25 Soojung Oh | 2,000 | 2,020 | Note 1 | | | 2,020 |
| 26 Soon Nam Kang | 500 | 505 | Note 1 | | | 505 |
| 27 Soonim Ahn | 500 | 505 | Note 1 | | | 505 |
| 28 Soonmyung Oh | 3,000 | 3,030 | Note 1 | | | 3,030 |
| 29 Sungil Oh | 1,000 | 1,010 | Note 1 | | | 1,010 |
| 30 Sungyeol Yim | 74,000 | 74,740 | Note 1 | | | 74,740 |
| 31 Yoonchung Kim | 5,100 | 5,151 | Note 1 | | | 5,151 |
| 32 Dong Sub Bang | 275,525 | 278,280 | Note 1 | | | 278,280 |
| 33 Park & Velayos LLP | 29,914 | 30,213 | Note 1 | | | 30,213 |
| 34 Hyung Yul Jang | 10,000 | 10,100 | Note 1 | | | 10,100 |
| 35 W. Daniel Lee | 425,000 | 429,250 | Note 1 | | | 429,250 |
| 36 SBA Monarch Towers III, LLC | 364,220 | 367,862 | Note 1 | | | 367,862 |
| **Total Unsecured Claims** | $ 1,727,105 | $ 1,744,376 | | $ - | $ - | $ 1,744,376 |

Exhibit 2 - HHCC Schedule of Claims REVISED 12-3-15

**Exhibit 2**
Page 2 of 2

# EXHIBIT 3

FROM KIM, LEE & PARK                    04.17.1995  16:07          P. 3

ENDORSED
FILED
in the office of the Secretary of State
of the State of California

MAR 2 9 1995

BILL JONES, Secretary of State

## ARTICLES OF INCORPORATION

OF

## HOLY HILL COMMUNITY CHURCH

### I.

The name of this Corporation is HOLY HILD COMMUNITY CHURCH.

### II.

A. This Corporation is a religious corporation and is not organized for the private gain of any person. It is organized under the Nonprofit Religious Corporation Law exclusively for religious purpose.

B. The specific purpose of this Corporation is to operate a Church to preach the gospel.

### III.

The name and address in the State of California of this Corporation's initial agent for service of process is:

Nam Kim
1111 Sunset Blvd.
Los Angeles, CA 90054

### IV.

A. This Corporation is organized and operated exclusively for religious purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code, as amended.

B. Notwithstanding any other provisions of these Articles of Incorporation, this Corporation shall not carry on any other activities not permitted to be carried on (a) by a corporation exempt from federal income tax under Section 501(c)(3) of the Internal Revenue Code, as amended, or (b) by a corporation contributions to which are deductible under Section 170(c)(2) of the Internal Revenue Code, as amended.

C. No substantial part of the activities of this Corporation shall consist of carrying on propaganda, or otherwise attempting to influence legislation, and the Corporation shall not participate or intervene in any political campaign (including the publishing or distribution of statements) on behalf of any candidate for public office.

V.

The property of this Corporation is irrevocably dedicated to
religious purposes and no part of the net income or assets of this
Corporation shall ever inure to the benefit of any private person.
Upon the dissolution or winding up of the Corporation, its
remaining after payment, or provision for payment, of all debts and
liabilities of this Corporation shall be distributed to a nonprofit
fund, foundation or corporation which is organized and operated
exclusively for religious purposes and which has established its
tax exempt status under Section 501(c)(3) of the Internal Revenue
Code, as amended.

Dated:    March 28, 1995

_____
Nam Kim, Incorporator

53

# Holy Hill Community Church Bylaws
## Chapter I General Provisions

Article 1 This church shall be called Mi-Ju Sung San Church (and Holy Hill Community Church in English).

Article 2 The founding purposes of the church areas follows.
1. To achieve worldwide evangelism and missionary works.
2. To grow and cultivate Christian leadership through Christian education.
3. To practice Christ's love through service and relief works.

Article 3 The address of the church is located at 1111 West Sunset Boulevard, Los Angeles, California 90012.

Article 4 The church can associate with a conservative evangelical Presbyterian denomination for the administrative purposes.

Article 5 Decision making and the execution of them are administered according to the bylaws of the church.

## Chapter 2 The Congregants' Life of Faith

Article 6 We believe that the Old and New Testaments are the Word of God and the only correct and flawless rule of our faith and acknowledge the Westminster Confession of Faith and the Larger and Shorter Catechisms as the creed of our faith.

Section 7 We, who have been reborn through Christ's grace and the Holy Spirit's works, shall hold fast to our duties and live our lives for God's glory by walking on the path of the holy fire with help from the Holy Spirit.

Article 8 We, as the body of the church shall commit to the growth and revival of the church community, observe worship services, the disciplines, doctrine, and administrative guidelines and put our efforts into saving souls through the practice of love while fully supporting the church's works.

Section 9 We shall put our efforts into meditating on the Word and a life of prayer as well as in building beautiful relationships, avoid slandering others, speaking only the truth and words of praise and thanks, and diligently keep promises made to others.

Article 10 A marriage is an important and holy event for a person so it should be entered into with another of the same faith if at all possible and in following the teachings of the Christ, the faithful must not divorce each other, and if there is a divorce, they shall make efforts to reunite. The faithful must abide by the ethics of monogamy, and wives shall submit to their husbands just as we submit to the Lord and husbands shall love their wives as Christ loved us.

Article 11 The children shall obey their parents in Christ and parents shall love their children, not provoke them, but raise and educate them with Christ's teachings and exhortations and protect them from all sorts of social evils.

# Chapter 3 Worship and Sacraments

## Section1 Public Worship
Article 12 The public worship service is held at a predetermined time and place in a devotional and orderly manner and led by a pastor.

Article 13 The public worship service is a holy ceremony at which the faithful glorify God, the participants should be obedient to the person presides over the service and all the order during the service must be respected. Anyone who disturbs the order is subject to discipline.

## Section 2 Sacraments
Article 14 The sacraments of the church are baptism and communion.
1) Baptism: Baptism is a ceremony that symbolizes that a believer has repented and been forgiven of sin in the name of Christ and reborn and is proclaimed to belong to the church.
2) Holy Communion: Holy Communion is a ceremony to receive bread and wine to remember Lord Christ's body and blood that was sacrificed for us.

Article 15 As a general rule, baptism is provided by the pastor in front of the congregation to the person of 16 years or older who has attended church for more than one full year and has been educated for a period of time of required contents. A child who is two years or younger can be baptized by the request of his or her parents, one of whom is baptized. The one who has been baptized in early childhood attains full membership when the person becomes 16 years old and passes the catechism for church membership.

Article 16 Holy Communion is held when the Elders' Board decides its necessity at the time decided by the pastor after notice is given in the weekly bulletin. Those who have not been baptized are prohibited from participating in Holy Communion.

# Chapter 4 Governance

## Section 1 Membership
Article 17 The membership consists of all religious workers and laypersons who are registered with the church. Members are categorized as follow:
1. New Member: A member who decides to believe in Jesus and attends the public worship services.
2. Full membership:  A person who has been baptized at the church or at another church, or had been baptized in childhood and has completed the full membership attaining ceremony.
3. Member Baptized in Childhood: A child baptized in early childhood, one of whose parent is a full member.

Article 18 Responsibility of the Church Member: The words and actions of a church member should glorify God, attend the public worship services, be observant of the church bylaws and church governance, observe Sunday as the Lord's Day, and serve the church by serving, evangelizing and giving offerings.

Article 19 The Rights of the Church Member: A full member can participate in Holy Communion and become a member of the Congregational Meeting. Every member can serve the church according to their God given talent.

## Section 2 Church Officers

Article 20 Every church member who is called as a church officer by the Lord should love God, uphold the church's virtue, carry out the given duties and do one's best to serve the church. The Church Offices are as follows.

### Item 1 Deacons

Article 21 Deacons are classified into appointed deacons and ordained deacons.

Article 22 The qualifications of the appointed deacons are a full member in good standing whose faith is true who is 25 years or older, faithful in performing financial responsibilities, have good reputation among fellow church goers, has a good reputation, possesses wisdom and discernment, has experienced grace, know and is observant of the bylaws, and has been baptized for over one year. An appointed deacon transferred from other church has to have a record of attending the church faithfully for at least 1 year. An appointed deacon is appointed by the Session and the term is 1 year.

Article 23 The office of an ordained deacon is a permanent church office and the qualifications for the candidate are that he has to be a male of over 30 years in age, has to have served diligently for 5 years as an appointed deacon, and must conform to Timothy 3: 8-12. An ordained deacon must be nominated by the Session and must receive more than 2/3 approval from the attending members of the Congregational Meeting through a secret anonymous ballot. An ordained deacon transferred from another church becomes cooperative ordained deacon through approval of the Session after 1 year of registration. When a cooperative deacon has served for 2 years, he can become an ordained deacon after being nominated by the Session and receive more than 2/3 approval of the attending members of the Congregational Meeting through a secret anonymous vote. A male appointed deacon who served faithfully in the church for over 5 years and is over 70 years of age can be appointed as an Honorary Ordained Deacon by a resolution of the Session.

Article 24 The duties of a deacon are to serve the church in various departments, perform financial duties, and dedicate oneself to prayer and evangelism.

### Item 2 Encouragers

Article 25 The office of the encourager is a permanent office and the candidate must be a female of over 50 years of age, has consistently served over 5 years of appointed deaconship, has served

the church, maintained a good attendance record and is a role model to other church members. An encourager is elected by vote of over 2/3 of the attending member of the Congregational Meeting through a secret anonymous vote after having received the Session's nomination. An encourager who has transferred from another church can become a cooperative encourager by a resolution of the Session after 1 year of registration. When a cooperative encourager has served 2 years, she can be elected by vote of over 2/3 of the attending members of the Congregational Meeting through a secret anonymous vote.

Article 26 The duties of the encourager are to serve the church, to look after the life of the church members by helping the pastors, dedicate herself to visiting members and prayer, and to helpfully serve fellow church members.

Article 27 The general retirement age for a serving encourager is 70 and she becomes an Honorary Encourager upon a decision by the Session. In the case of a female deacon who has served the church faithfully for over 5 years and who is 70 years of age, she can be appointed an Honorary Encourager by a resolution of the Session.

**Item 3 Elders**

Article 28 The office of an elder is a permanent church office and the qualifications for candidacy is that he has to be a male over 40 years of age but under 63, one who has served the church faithfully as an ordained deacon over 5 years, must be above reproach, a husband of but one wife, tempered with moderation, of good conduct, hospitable, able to teach, not given to drunkenness, not violent but gentle, not quarrelsome, not a lover of money, while managing his own family well and see that his children obey him with proper respect, has a good reputation among outsiders (Timothy 3: 1-7), with a good knowledge of the bible, is a knowledgeable man with leadership, serving other with sincerity, is well behaved and worthy of representing church members, keeps Sundays as the holy Day of the Lord, diligently attends various church meetings, and faithfully performs financial responsibilities. Generally, the number of the elders is elected one for every 20 full members.

Article 29 The Session nominates the candidate, and he is elected by a secret anonymous vote by more than 2/3 approval from the attending members of the congregational meeting. The Session shall educate the elected elder for a period of time to prepare for the qualifying test and, when passed the test, after which he is ordained by the laying of hands to become a serving elder.

Article 30 The duties of a serving elder are to serve the church by becoming a member of the Session, govern the church by cooperating with the pastors, oversee the lives of faith of the church members, to give proper guidance and encouragement to the church members so that they will not misunderstand the truth of the bible and to be free of moral corruption, and to dedicate oneself to payer and evangelism.

Article 31An elder is categorized depending upon the position and duty as follows:
1. A serving elder is an elder who has been elected in accordance with the bylaws at a congregational meeting and it refers to a person who serves for a period of time as a Session member.

2. An elder who does ministerial work is appointed by a resolution of the Session from among the serving elders who is not able to serve the Session for a set period of time due to certain circumstances but one who has participated in various volunteer work.

3. An inactive elder who has temporarily left office as serving elder for special reasons. The reinstatement of an inactive elder must follow the Session's operating rules.

4. An elder emeritus is a person who is over the age of 70 and has served this church as a serving elder for more than 10 years and has retired for whose significant and meritorious work the church wishes to commemorate and who is appointed by a resolution of the Session.

Article 32 A honorary elder is a person who has made great contributions to the church and who has managed to diligently serve as an ordained deacon for more than 5 years and has attained an age of 70 years, in which case he can be appointed by a resolution of the Session.

Article 33 A cooperative elder is a person who has moved to this church from another church, whose faith coincides with that of this church and has attended this church diligently for more that 1 year becoming a role model to the congregation at which point the Session can appoint him as a cooperative elder with a resolution. If a person among those who has served the church as a cooperative elder for more than 2 years has the qualifications to become an elder (Article 30), the Session can nominate him and he can become a serving elder if he obtains 2/3 approval by secret anonymous vote from those attending the congregational meeting.

**Item 4 Pastors**

Article 34 The qualifications of a pastor are that he must be a graduate of a seminary that is recognized by the general assembly of the denomination that this church is affiliated with, has been ordained as a pastor, is of a conservative and evangelical faith, is learned and of good behavior, is sincere in his faith, is talented in his teaching capabilities, is above reproach, managing the family well, has a good reputation among the outsiders, and is experienced in church ministry for a considerable period of time.

Article 35 The titles and duties of the pastors are as follows:

1. Senior Pastor: A senior pastor is a pastor who is called and installed, or in temporary service according to the procedures specified in the church bylaws and presides over worship services and holy ceremonies. A senior pastor prays for the church members, teaches and preaches the Word of God, gives blessings in the name of the Holy Trinity, performs the duties assigned according to the bylaws of the general assembly of the denomination in which the church is affiliated, is responsible for the ministry and the church's administration, and controls all the organizations in the church and represents the church and congregation inside and out.

2. Associate Pastor: An associate pastor is a full time pastor who assists the senior pastor in all areas of the ministry who is appointed for a 1 year term with a resolution of the Session.

3. Cooperative Pastor: A pastor who is registered and attending the church and cooperates with the senior pastor in his ministry who can be appointed by the Session when deemed necessary.

4. Merit Pastor: When a pastor whose meritorious work has been recognized resigns, he can be appointed by a resolution of the Session as a merit pastor as an honor.

5. Pastor Emeritus: When the Senior Pastor who has worked over 10 years at this church submits a resignation to the presbytery the church may be affiliated with, the Session can determine the salary and appoint him as a pastor emeritus.

Article 36 If any serving pastor needs to leave the church for more than 1 month on paid to physically recover, study theology, take a sabbatical or other reasons, the pastor must obtain the approval of Session and report to the Officers' Committee.

**Item 5 Intern Pastors**

Article 37 An intern pastor is someone who has graduated from or is currently enrolled in a seminary school recognized by the general assembly of the denomination the church may affiliated with and is appointed by the Session when it is deemed necessary. An intern pastor is directed by the senior pastor and serves the church following the Intern Pastors Work Standard for a 1 year term.

## Section 3 Meetings

**Item 1 Pastors Meeting**

Article 38 The Senior Pastor organizes a Clerics' Committee consisting of pastors and intern pastors to discuss, give instructions and to get assistance over matters of ministry.

**Item 2 The Session**

Article 39 The Session is the highest governing body of the church. A Session consists of the Senior Pastor and serving elders and the associate pastors can attend the meeting to support the Senior Pastor upon the Senior Pastor's request and express opinions. The Senior Pastor becomes the session moderator. The Session elects a secretary to assist the moderator, and the secretary is elected on the basis of the experience in the Session. The Session appoints an assistant secretary. When the Session Moderator is absent, the secretary can act as his proxy. If needed, the Session can invite other persons to attend as witnesses.

Article 40 Duties of the Session:
1. Overseeing the spiritual status of the congregation and making decisions on necessary projects.
2. Inviting pastoral staff and forming the long and short term projects.
3. Reviewing the budget and settlements, approval of new projects and reserve costs outside the budget, and supervising the execution of the budget.
4. Overseeing reward and discipline, coordinating the projects between the departments, and managing the assets of the church.
5. Managing and appointing the various church personnel.
6. Handling the various works that have not been prescribed as a duty of a department or deciding on which departments are to be responsible and handling the suggestions from each department at church level.
7. For those projects that need special or professional assistance, the members of the Officers' Committee should participate and form a special organization or committee to handle it.

8. Overseeing the official trips of the pastors, special guest speakers, and special offerings.
9. Handling matters entrusted to it by the Officers' Committee and the congregational meeting.
10. In urgent cases, the Session can carry out a resolution first and then obtain the approval of the responsible department.
11. The Session shall operation under a separate Session operating rules.

Article 41 A serving Elder has to be reconfirmed of the position every 5 years at the congregational meeting. The reconfirmation is made by the majority of the congregation attending the congregational meeting.

Article 42 There are two types of Session meetings, one being a regular Session meeting that meets at a predetermined time, and the other being special Session meetings which are called when the Session moderator deems it necessary or when more than 1/3 of the registered Session members request it. When a special Session meeting is requested the Session moderator must call it.

### Item 3 Officers' Committee Meetings

Article 43 The members of the Officers' Committee consist of the senior pastor, pastor emeritus, associate pastors, cooperative pastors, intern pastors, cooperative intern pastors, serving elders, inactive elders, mission elders, elders emeritus, honorary elders, serving encouragers, encouragers, cooperative encouragers, ordained deacons, honorary ordained deacons, cooperative ordained deacons, and appointed deacons.

Article 44 Duties of Officers' Committee
1. Executes the budget finalized at the congregational meeting.
2. Receives reports from each department's business and makes the necessary decisions.
3. Cooperate and serve for the benefit of the church business to the full extent.
4. Handle the business entrusted to it by the Session.

Article 45 The Session moderator becomes the chairperson of the Officers' Committee. When the Session moderator is absent, the secretary of the Session acts as the proxy. The Officers' Committee shall elect a secretary and an assistant secretary to keep the records and to contact people.

Article 46 The place and time of the Officers' Committee meeting is to be announced in Church's weekly bulletin and opened with those who attend at the time. As long as there are no separate rules for the decision making process of the Officers' Committee, it shall be done with approval of the majority of the attendees.

Article 47 The Officers' Committee meetings are divided into regular and special meetings and it will be the general rule that the former is to be called every 2 months and the latter must be called by the chairperson the Officers' Committee when the Session recognizes that it necessary or when more than a majority of the Officers' Committee members request that it be called.

Article 48 A director of each department shall report to the Officers' Committee regarding its business and encourage the officers to take an interest and understand the operation of the church and pray, and encourage the members of the departments to actively participate in the operations of the departments by holding departmental meetings.

**Item 4 Congregational Meeting**

Article 49 A congregational meeting consists of the registered members who are 16 years or older with full membership.

Article 50 The moderator of the Session becomes the moderator of the congregational meeting and the secretary of the Session becomes the secretary of the congregational meeting. A congregational meeting is called by the decision of the Session, or by the moderator of the congregational meeting when necessary and the date and the location of the meeting are to be announced in the weekly bulletin a week before the meeting is to be opened with the attendees. The congregational meeting can deal with the agenda that has been announced when the meeting was called and that which had been urgently presented by the Session.

Article 51 A congregational meeting is divided into a regular one and a special one with the former meeting either at the end of the or during the beginning of the year and the latter is to be called by the moderator of the congregational meeting when necessary after having passed the Session by a resolution.

Article 52 The congregational meeting shall make decisions on what has been prescribed by these bylaws and the matters, budget and settlements, election of personnel and other matters submitted by the Session and the Officers' Committee.

Article 53 As long as there are no separate rules for resolutions passed by a congregational meeting, it shall be done by approval from the majority of the attendees.

## Section 4 Church Organization and Regulations

Article 54 The church establishes necessary organizations to support and manage worship, evangelism and missionary work, spiritual training, service and fellowship, relief work, managing church assets, and general ministry. A separate "Church Organization and Operational Regulations" can be established for this purpose. Furthermore, a separate "Personnel Regulations" can be established for the personnel management of the clerics and church employees and welfare administrations.

# Chapter 5 Invitation and Resignation of the Senior Pastor

Article 55 To call a senior pastor, the invitation committee should make the recommendation and the Session and the Officers' Committee must pass a resolution and obtain permission from the individual and then obtain more than 2/3 approval from the congregational meeting through a secret anonymous vote before obtaining permission from the affiliated presbytery after which the pastor is to be invited, installed and asked to serve.

61

Article 56 A pastor who has been invited should be inducted as an appointed pastor through an installation ceremony.

Article 57 When the senior pastor cannot carry on with his the duties because of poor health, serious wrongdoing, or some other unavoidable reason he may voluntarily resign the position with the permission of the presbytery the church may be affiliated with and the Session or the affiliated presbytery and the Session may recommend the resignation.

# Chapter 6 Management of Church Property

## Section 1 Church Assets

Article 58 The assets of the church consists of assets the church has created and real estate and assets from the donations of individuals or organizations. However, when a member of the congregation donates moveable or immovable property to the church, that immediately becomes an asset of this church and the donor does not have any rights.

Article 59 The assets of this church are categorized into movable and immovable properties and all the rights to the assets are held by this church, and no individual, organization, affiliated presbytery, or general assembly has the property right. The church property is preserved, managed, and maintained directly by the Session or by designation.

Article 60 The church building is to be used solely for the gatherings set by the Session or for Session approved assemblies. Should organizations within the church wish to use the building for non-regular gatherings, they need to obtain permission from the Session. When individuals want to use it for personal celebratory or consolatory events or if an outside organization, prior permission must be obtained from the Session.

Article 61 The maintenance and management of all the church's fixtures and equipments are to be done by the directors or managers of the responsible departments or the custodians and church permission must be obtained to move them.

## Section 2 Financial Deposits and Withdrawals and Audits

Article 62 All financial deposits and withdrawals must be made after receiving a payment request form and the director of the financial department is responsible for all the deposits and withdrawals.

Article 63 All donations must be deposited in a financial institution but the issuance of checks must be done by obtaining the signatures of 2 out of the 4 people in the Issuance Committee who have been designated as by the financial department and the Session.

Article 64 No one is allowed to raise fund from the church members for unbudgeted events or events without the Session's permission.

Article 65 The financial department must submit financial reports to the regularly scheduled Session and Officers' Committee, and the Session and Officer's Committee must check them and make the necessary decisions.

Article 66 Audits must be performed according to the separate auditing rules every 6 months and the results must be reported to the Session and Officers' Committee, and to the annual congregational meeting once a year. Every department should diligently conform to the corrective advices of the auditor.

## Chapter 7 Rewarding and Discipline

Article 67 The Session can reward those who contributed prominently to the evangelizing and mission works, education and service, and church development.

Article 68 As the Church is a holy community, if any church member violates the teachings of the Holy Bible or acts against the glory of God, fails to edify the church, or the member violates the church bylaws, that person is subject to the discipline. The purpose of discipline is to purify the church, to promote moral excellence, and to enhance spiritual welfare of the sinners.

Article 69 The 5 disciplinary actions in this church are, censure, suspension from office, removal from office, termination, and excommunication and the Session shall decide with more than 2/3 approval before notifying the individual of the results. However, when disciplining the moderator of the Session, the Session's decision must be approved by more than 2/3 of the Officers' Committee by secret anonymous vote.

The contents of the disciplinary actions are:
1. Censure: Behave oneself for a minimum of 1 month
2. Suspension from Sacraments: Temporarily limited to the Sacraments.
3. Suspension from Office: Suspend only from the rights of the office for a maximum of 1 year.
4. Removal from Office: Stripped of various official rights in the church.
5. Excommunication: The member's name will be struck from the church membership List.

Article 70 If a person who is under discipline deeply repents or the period of the said discipline is over, the disciplinary action shall be lifted by the decision of the Session and the person notified of the results.

Article 71 If a member leaves the church without notice and does not perform the duties as a member for 3 months, membership is terminated. If a member requests a transfer of membership because of a move or for any special reason, it is granted by the Session's decision.

Article 72 If the member whose membership is terminated returns to the church, the membership may be restored by the decision of the Session after 6 months.

63

## Chapter 8 Inter-Church Mutual Cooperation

Article 73 When it is necessary to effectively accomplish the evangelical mission, which is the church's founding purpose, the church may establish sister relations with other churches, or organize branch churches and help with the financing, and carry out joint missionary projects with other churches with the approval of the Session and Officers' Committee.

Article 74 The church may form a coalition and cooperate with conservative evangelical churches with the approval of the Session to promote personal spiritual upgrade and fellowship for church growth.

## Chapter 9 Amendment of the Bylaws

Article 75 Amendment of the Bylaws is normally initiated by the Session members with the majority decision. It may also be initiated by more than 1/3 of the members with full membership or more than 1/3 of the Officers' Committee members upon which a motion to amend is proposed and submitted to the Session, and then the Session should evaluate it and submit it to the congregational meeting for a decision by vote.

Article 76 More than 2/3 of the attending members of the congregational meeting has to approve for the bylaws to be amended.

## Chapter 10 Supplemental Provisions

Article 77 Should there be any case that is not provided for in the bylaws in the course of enforcing the bylaws, may be referred to the rules of the higher courts, and in the event of uncertainty of generally accepted practice the decision of the Session is to be followed.

Article 78 These bylaws are effective immediately upon its approval by the congregational meeting. (October 31, 2004)

# EXHIBIT 4

# Holy Hill Community Church
## Debtor Parties

| Faction: | Suh Faction | Cho Faction | Tak Faction | Bang Faction |
|---|---|---|---|---|
| Authorized Representatives: | Daniel Bahk<br>Min Chul Sa<br>John Jongchun Suh<br>Andrew (Yoon Dae) Kim | Sang Yoon Cho<br>Kwang Nam Kim<br>Jun Ki Kim | Henry (Hae Hoon) Owh<br>Young Won Byun<br>Sung Yeol Yim<br>Mae Ja Tak | Dong Sub Bang<br>Noh Chul Park<br>John Choi |
| Attorneys: | J. Scott Bovitz<br>Jaenam Coe | Dan Lee<br>Rick Baum | Gina Luago | Howard B. Kim |

**Exhibit 4**

Exhibit 4 - HHCC Member Parties

65

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

Arent Fox LLP, Gas Company Tower, 555 West Fifth Street, 48th Floor, Los Angeles, CA 90013.

A true and correct copy of the foregoing document entitled (*specify*): **CHAPTER 11 TRUSTEE'S SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION (DATED NOVEMBER 3, 2015)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **12/07/2015** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **12/07/2015**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


| | | |
|---|---|---|
| 12/07/2015 | AYLIN SOOKASSIANS | /s/ Aylin Sookassians |
| *Date* | *Printed Name* | *Signature* |


This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                              **F 9013-3.1.PROOF.SERVICE**

AFDOCS/12737805.1

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

Richard T Baum on behalf of Debtor Holy Hill Community Church
rickbaum@hotmail.com, rickbaum@ecf.inforuptcy.com

Richard T Baum on behalf of Defendant Holy Hill Community Church
rickbaum@hotmail.com, rickbaum@ecf.inforuptcy.com

Bernard D Bollinger, Jr on behalf of Creditor 1111 Sunset, LLC and Downtown Capital, LLC
bbollinger@buchalter.com, IFS_filing@buchalter.com;smartin@buchalter.com

Bernard D Bollinger, Jr on behalf of Creditor Downtown Capital, LLC
bbollinger@buchalter.com, IFS_filing@buchalter.com;smartin@buchalter.com

Bernard D Bollinger, Jr on behalf of Interested Party Courtesy NEF
bbollinger@buchalter.com, IFS_filing@buchalter.com;smartin@buchalter.com

J Scott Bovitz on behalf of Creditor Andrew Kim
bovitz@bovitz-spitzer.com

J Scott Bovitz on behalf of Creditor Jong Chun Suh
bovitz@bovitz-spitzer.com

J Scott Bovitz on behalf of Defendant John J. Suh
bovitz@bovitz-spitzer.com

J Scott Bovitz on behalf of Defendant Jong Jongchun Suh
bovitz@bovitz-spitzer.com

J Scott Bovitz on behalf of Plaintiff John J. Suh
bovitz@bovitz-spitzer.com

Jaenam J Coe on behalf of Debtor Holy Hill Community Church
coelaw@gmail.com

M Douglas Flahaut on behalf of Trustee Richard J Laski (TR)
flahaut.douglas@arentfox.com

Barry S Glaser on behalf of Creditor Los Angeles County Treasurer and Tax Collector
bglaser@swesq.com, erhee@swesq.com

Barry S Glaser on behalf of Interested Party Courtesy NEF
bglaser@swesq.com, erhee@swesq.com

Melanie Scott Green on behalf of U.S. Trustee United States Trustee (LA)
Melanie.green@usdoj.gov, dare.law@usdoj.gov;Kenneth.g.lau@usdoj.gov;Kelly.l.morrison@usdoj.gov

Michelle S Grimberg on behalf of Creditor Alpine Parking Services, LLC
msg@lnbrb.com, angela@lnbrb.com

Howard B Kim on behalf of Plaintiff The Western California Presbytery
hbklaw@gmail.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                **F 9013-3.1.PROOF.SERVICE**

AFDOCS/12737805.1

Andy Kong on behalf of Attorney Arent Fox LLP
Kong.Andy@ArentFox.com

Andy Kong on behalf of Interested Party Courtesy NEF
Kong.Andy@ArentFox.com

Andy Kong on behalf of Interested Party Richard J Laski
Kong.Andy@ArentFox.com

Andy Kong on behalf of Plaintiff Holy Hill Community Church
Kong.Andy@ArentFox.com

Andy Kong on behalf of Plaintiff Dana Park
Kong.Andy@ArentFox.com

Andy Kong on behalf of Trustee Richard J Laski
Kong.Andy@ArentFox.com

Andy Kong on behalf of Trustee Richard J Laski (TR)
Kong.Andy@ArentFox.com

Jeffrey A Krieger on behalf of Creditor 1111 Sunset Boulevard, LLC
jkrieger@ggfirm.com, kwoodson@greenbergglusker.com;calendar@greenbergglusker.com;jking@greenbergglusker.com

Jeffrey A Krieger on behalf of Interested Party Courtesy NEF
jkrieger@ggfirm.com, kwoodson@greenbergglusker.com;calendar@greenbergglusker.com;jking@greenbergglusker.com

Jeffrey A Krieger on behalf of Intervenor-Plaintiff 1111 Sunset Boulevard, LLC
jkrieger@ggfirm.com, kwoodson@greenbergglusker.com;calendar@greenbergglusker.com;jking@greenbergglusker.com

Richard J Laski (TR)
rlaski@wilshirellc.com

Kenneth G Lau on behalf of U.S. Trustee United States Trustee (LA)
kenneth.g.lau@usdoj.gov

Won Lee on behalf of Creditor Lee Law Offices
dlee@leelawltd.com

Won Lee on behalf of Debtor Holy Hill Community Church
dlee@leelawltd.com

Won Lee on behalf of Defendant Holy Hill Community Church
dlee@leelawltd.com

Won Lee on behalf of Defendant Jun Ki Kim
dlee@leelawltd.com

Won Lee on behalf of Defendant Kwang Nam Kim
dlee@leelawltd.com

Won Lee on behalf of Defendant Sang Yoon Cho
dlee@leelawltd.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                    **F 9013-3.1.PROOF.SERVICE**

AFDOCS/12737805.1

Matthew A Lesnick on behalf of Creditor Metropolitan Water District of Southern California
matt@lesnickprince.com, tmims@lesnickprince.com;matt@ecf.inforuptcy.com

Matthew A Lesnick on behalf of Defendant Metropolitan Water District of Southern California
matt@lesnickprince.com, tmims@lesnickprince.com;matt@ecf.inforuptcy.com

Matthew A Lesnick on behalf of Interested Party Courtesy NEF
matt@lesnickprince.com, tmims@lesnickprince.com;matt@ecf.inforuptcy.com

Marvin Levy on behalf of Creditor Dana Park
l-levy@sbcglobal.net, G6266@notify.cincompass.com

Marvin Levy on behalf of Plaintiff Dana Park
l-levy@sbcglobal.net, G6266@notify.cincompass.com

Lucian B Murley on behalf of Creditor SBA Monarch Towers III LLC
lmurley@saul.com, rwarren@saul.com

Aram Ordubegian on behalf of Interested Party Courtesy NEF
ordubegian.aram@arentfox.com

Aram Ordubegian on behalf of Interested Party Aram Ordubegian
ordubegian.aram@arentfox.com

Aram Ordubegian on behalf of Trustee Richard J Laski (TR)
ordubegian.aram@arentfox.com

David J Richardson on behalf of Creditor Parker Shumaker Mills, LLP
drichardson@sulmeyerlaw.com, drichardson@ecf.inforuptcy.com

David J Richardson on behalf of Interested Party Courtesy NEF
drichardson@sulmeyerlaw.com, drichardson@ecf.inforuptcy.com

Victor A Sahn on behalf of Creditor Law Offices of Carl J. Sohn
vsahn@sulmeyerlaw.com,
agonzalez@sulmeyerlaw.com,agonzalez@ecf.inforuptcy.com;asokolowski@sulmeyerlaw.com;vsahn@ecf.inforuptcy.com

Victor A Sahn on behalf of Creditor Parker Mills, LLP
vsahn@sulmeyerlaw.com,
agonzalez@sulmeyerlaw.com,agonzalez@ecf.inforuptcy.com;asokolowski@sulmeyerlaw.com;vsahn@ecf.inforuptcy.com

Victor A Sahn on behalf of Creditor Parker Shumaker & Mills
vsahn@sulmeyerlaw.com,
agonzalez@sulmeyerlaw.com,agonzalez@ecf.inforuptcy.com;asokolowski@sulmeyerlaw.com;vsahn@ecf.inforuptcy.com

Victor A Sahn on behalf of Creditor Parker Shumaker Mills, LLP
vsahn@sulmeyerlaw.com,
agonzalez@sulmeyerlaw.com,agonzalez@ecf.inforuptcy.com;asokolowski@sulmeyerlaw.com;vsahn@ecf.inforuptcy.com

Victor A Sahn on behalf of Interested Party Courtesy NEF
vsahn@sulmeyerlaw.com,
agonzalez@sulmeyerlaw.com,agonzalez@ecf.inforuptcy.com;asokolowski@sulmeyerlaw.com;vsahn@ecf.inforuptcy.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                     F 9013-3.1.PROOF.SERVICE

Alla Tenina on behalf of Broker LBC Solutions
sashavk_1@yahoo.com, alex@teninalaw.com;alla@teninalaw.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

Michael L Wachtell on behalf of Creditor 1111 Sunset, LLC and Downtown Capital, LLC
mwachtell@buchalter.com

Scott L Whitman on behalf of Creditor Wilshire Escrow Company
slw@mwlegal.com, holly@mwlegal.com

Scott L Whitman on behalf of Interested Party Courtesy NEF
slw@mwlegal.com, holly@mwlegal.com

Scott L Whitman on behalf of Plaintiff Wilshire Escrow Company
slw@mwlegal.com, holly@mwlegal.com

Vanessa H Widener on behalf of Interested Party Courtesy NEF
vhw@amclaw.com, lmg@amclaw.com

Clarisse Young on behalf of Interested Party Courtesy NEF
youngshumaker@smcounsel.com, levern@smcounsel.com


2.  **SERVED BY UNITED STATES MAIL**:

**JUDGE**

Honorable Julia W. Brand
United States Bankruptcy Court
255 E. Temple Street, Suite 1382
Los Angeles, CA 90012

**REQUEST FOR SPECIAL NOTICE**

Liquidity Solutions, Inc.
1 University Plaza, Suite 312
Hackensack, NJ 07601

**MAILING MATRIX**

1111 Sunset Blvd LLC
1855 Industrial Street
Suite 106
Los Angeles, CA 90021-1239

1111 Sunset Blvd Lp
Buchalter Nemer
Attn:  Michael Wachtell, Esq
1000 Wilshire Blvd, Suite 1500
Los Angeles CA 90017-1730

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

AFDOCS/12737805.1

Albert K. Shin
12673 Eighth St.
Garden Grove, CA 92840-5306

All to One Construction, Inc.
c/o Samuel B. Choi
1401 W. Olympic Blvd.
Los Angeles, CA 90015

All to One Development Co., LLC
3250 Wilshire Blvd., Ste 1200
Los Angeles, CA 90010-1600

Alpha Omega Builders, Inc.
c/o Ronald B. Smith
512 W Robertson Blvd.
Chowchilla, CA 93610-2847

Alpine Parking Services LLC
1855 Industrial Street
Suite 106
Los Angeles, CA 90021-1239

Angelus Block, Co., Inc.
c/o Edward Antonini
11374 Tuxford St.
Sun Valley, CA 91352-2678

Associated Ready Mixed Concrete Inc.
c/o Kurt Caillier
4621 Teller Ave., Suite 130
Newport Beach, CA 92660-2165

Chan Hyo Tak and Mae Ja Tak
8346 Charloma Drive
Downey, CA 90240-3312

Cheonung Kim and Ki Young Kim
1279 W 38th St
Los Angeles, CA 90037-1124

Chin Hwa Jung and Mi Jung Chong
5755 Corbett St
Los Angeles, CA 90016-4503

Charles M. Shumaker
1 Ringbit Road W
Rolling Hills, CA 90274

Chunghyun Ahn and Bockhee Ahn
2186 Ursinus Circle
Claremont, CA 91711-1817

Devirian & Shimoto PC
11400 W Olympic Blvd, Ste 200
Los Angeles, CA 90064-1584

Downtown Capital Llc
Buchalter Nemer
Attn:  Michael Wachtell Esq
1000 Wilshire Blvd Suite 1500
Los Angeles, CA 90017-1730

Downtown Capital, LLC
2121 E 7th Place #104
Los Angeles, CA 90021-1762

East West Institute
c/o Edward B. Wong
386 8th St
Oakland, CA 94607-4241

Consumer Law Section, Attn: Bankruptcy
Notices
California Attorney General's Office
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004

Edwin M Rosenberg ALC
16161 Ventura Blvd., Suite 776
Encino, CA 91436

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

AFDOCS/12737805.1

Holy Hill Community Church
1111 W. Sunset Blvd.
Los Angeles, CA 90012-1216

Holy Hill Community Church
A Nonprofit Religious Corporation
1111 Sunset Blvd
Los Angeles, CA 90012-1216

Internal Revenue Service
PO Box 7317
Philadelphia, PA 19101-7317

JB Sunset Partnership
c/o The Dreifuss Firm
Attn:  Bruce Dannemeyer, Esq.
7700 Irvin Center Dr, Ste 710
Irvine, CA 92618-3043

Jong Oak Kim
Attn: Carl James Sohn
11900 Shasta Circle
Cerritos, CA 90703-2720

Joong Hoon Kim
5406 Goldenest Avenue
Temple City, CA 91780-3218

Jo Young Bang and Ki Bok Bang
716 Coldbrook Place
Simi Valley, CA 93065-5531

Jung Sun Choi
2451 West 7th Street #326
Los Angeles, CA 90057-3943

Kwang Chul Shin
Attn: Carl James Sohn
11900 Shasta Circle
Cerritos, CA 90703-2720

LA County Tax Collector
225 North Hill Street
Los Angeles, CA 90012-3253

Henry H. Owh
13116 Avenida Santa Tecla #717-C
La Mirada, CA 90638-3278

INTERNAL REVENUE SERVICE
300 North Los Angeles Street
M/S 5022
Los Angeles, CA 90012-3351

James C. Oh
1461 South Boros Court
La Habra, CA 90631

Joan Park
2000 Miranmar Street
Suite 617
Los Angeles, CA 90057-2336

Jong Oak Kim
Attn: Carl James Sohn
11900 Shasta Circle
Cerritos, CA 90703-2720

Joong Chil Kim
234 Rimpau Boulevard
Los Angeles, CA 90004-3733

Jung Hyun and Bok Hee Ahn
2186 Ursinus Circle
Claremont, CA 91711-1817

Kon Kyu Yu and Sun Yim Yu
2049 Wilshire Avenue
Hacienda Heights, CA 91745-3448

Law Offices of Carl James Sohn
11900 Shasta Circle
Cerritos, CA 90703-2720

LOS ANGELES COUNTY ASSESSOR
LOS ANGELES CA 90012

**F 9013-3.1.PROOF.SERVICE**

Los Angeles City Clerk
P.O. Box 53200
Los Angeles, CA 90053-0200

Moon Kon Kyu Yu and Sun Yim Yu
2049 Wilshire Ave.
Hacienda Heights, CA 91745-3448

Ok Sun Whang
6556 West 3rd Street
Los Angeles, CA 90045-2848

Pacific Fire Protection Safety
c/o Peter Oliver Hurgoiu
8219 Rhodes Av
North Hollywood, CA 91605-1344

Parker Shumaker Mills LLP
ATTN:  David Yang Esq
801 S. Figueroa St. #1200
Los Angeles, CA 90017

Parker Shumaker Mills, LLP
801 S. Figueroa St. #1200
Los Angeles, CA 90017

Parker, Shumaker & Mills
Attn: William Mills & Gina Leago
801 S. Figueroa St. #1200
Los Angeles, CA 90017

Pil Soon Joo
4341 Willow Brook Ave., #301
Los Angeles, CA 90029-2922

Pueblo Contracting Services, Inc.
c/o Martha Diaz Aszkenazy
601 S. Brand Blvd, 3rd Fl
San Fernando, CA 91340-4069

Wilshire Escrow Company
c/o Scott Whitman, Esq.
5670 Wilshire Blvd., Suite 2170
Los Angeles, CA 90036

Richard T. Baum
Law Offices of Richard T. Baum
11500 W Olympic Blvd, Ste. 400
Los Angeles, CA 90064-1525

Sang Nam Kim
14704 Sunny Drive
Sylmar, CA 91342-0922

Securities & Exchange Commission
5670 Wilshire Avenue, 11th Floor
Los Angeles, CA 90036-5627

Shepherd University
3200 N. San Fernando Rd
Los Angeles, CA 90065-1415

Sierra Craft, Inc.
17711 East Railroad St.
La Puente, CA 91748-1111

Simi Valley Shopping Center
Loeb & Loeb LLP
10100 Santa Monica Blvd., Ste. 2200
Los Angeles, CA 90067-4003

Snell & Wilmer LLP
Attn: Christy Joseph & Randy Moore
600 Anton Blvd., Suite 1400
Costa Mesa, CA 92626-7689

Snell & Wilmer LLP
Two California Plaza
350 South Grand Ave, Ste 2600
Los Angeles, CA 90071-3487

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

AFDOCS/12737805.1

Soo II Jang and Eun Hee Jang
947 South Hoover Street
Suite 803
Los Angeles, CA 90006-1939

Soo Nam Oh
15945 Alta Vista Drive
La Mirada, CA 90638-3239

Soo Jung Oh
740 South Olive Street
Los Angeles, CA 90014-2616

Soon Nam Kang
200 Miranmar Street, Suite 518
Los Angeles, CA 90057

Sun Gil Oh
1015 North Kingley Drive, Suite 220
Los Angeles, CA 90029-1249

Sung Yeol Yim and In Rea Yim
11715 La Tierra Court
Northridge, CA 91326-1939

United States Trustee (LA)
Attn: Melanie S. Green/Kenneth G. Lau
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017-3560

Dong Sub Bang
c/o Howard B. Kim, Esq.
3055 Wilshire Blvd., Suite 1040
Los Angeles, CA 90010

W. Dan Lee, Esq.
Debtor's Attorneys
Lee Law Offices
5670 Wilshire Blvd., Suite 2150
Los Angeles, CA 90036

World Evangelical Church
c/o Jim Hyan Choi
727 S. Ardmore Ave., #206
Los Angeles, CA 90005-2494

Yoon Chung Kim
450 South Grand View Street
Suite 510
Los Angeles, CA 90057-2818

Dana Park
Beverly Hills Real Investment LLC
1021 W. Oak Hills Ct.
La Habra, CA 90631

Dana Park
3530 Wilshire Blvd. Ste 1850
Los Angeles, CA 90010

Dana Park
2271 W. Malvern Ave #270
Fullerton, CA 92833

Marvin Levy, Esq.
11806 Moorpark Street, Apt. G
Studio City, CA 91604

Park and Velavos LLP
801 S. Figueroa St., Suite 450
Los Angeles, CA 90017

Soon Im Ahn
450 S. Grandview Street, Suite 205
Los Angeles, CA 90057

Hyung Yul Jang
14781 Groveview Lane
Irvine, CA 92604

Soon Myung Oh
15945 Alta Vista Drive
La Mirada, CA 90638

Seong Sook Shim
1222 North Fairfax Ave., Suite 317
Los Angeles, CA 90046

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

Rev. Albert Kwang Chul Shin
12673 Eighth Street
Garden Grove, CA 92840

Metropolitan Water District of Southern California
c/o Matthew A. Lesnick
Lesnick Prince & Pappas LLP
185 Pier Ave., Suite 103
Santa Monica, CA 90405

## FEDERAL AND STATE GOVERNMENT AND TAX AUTHORITIES

Franchise Tax Board
Bankruptcy Section, MS: A-340
P. O. Box 2952
Sacramento, CA 95812-2952

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

U. S. Securities and Exchange Commission
Attn: Bankruptcy Counsel
444 South Flower Street, Suite 900
Los Angeles, CA 90071-9591

Employment Development Department
Bankruptcy Group MIC 92E
P. O. Box 826880
Sacramento, CA 94280-0001

Los Angeles County Tax Collector
P. O. Box 54110
Los Angeles, CA 90054-0110

State Board of Equalization
Account Information Group, MIC: 29
P.O. Box 942879
Sacramento, CA 94279-0029

Secretary of State
State of California
1500 - 11th Street
Sacramento, CA 95814

Environmental Protection Agency
Attn: Bankruptcy Department
75 Hawthorne Street
San Francisco, CA 94105

Environmental Protection Agency
Attn: Bankruptcy Department
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

United States Attorney's Office
Federal Building, Room 7516
300 North Los Angeles Street
Los Angeles, CA 90012

Consumer Law Section, Attn: Bankruptcy Notices
California Attorney General's Office
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004

Attorney General
United States Department of Justice
Ben Franklin Station
P.O. Box 683
Washington, D.C. 20044

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.